Lowes v. Cabletron                    CV-96-77-M     11/25/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Darlene Lowes,
      Plaintiff

      v.                                      Civil No. 96-77-M

Cabletron Systems, Inc.,
      Defendant


# O R D E R

Darlene Lowes brings this breach of contract action against her former employer, Cabletron Systems, Inc., claiming that Cabletron wrongfully refused to honor certain stock options issued to her under the Cabletron 1989 Equity Incentive Plan. She also claims that Cabletron wrongfully refused to issue her a number of shares in Gratias Corporation, pursuant to the Gratias Corporation 1989 Restricted Stock Plan. Cabletron denies that Lowes is entitled to any additional shares of either Cabletron Systems, Inc. or Gratias Corporation, and moves for summary judgment. Lowes objects and has filed a cross motion for summary judgment. The court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.


## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c).  In ruling upon a party's motion for summary judgment, the court must, "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

## Facts

By order dated December 13, 1996, the court denied Cabletron's motion for summary judgment, concluding that its board of directors (and its incentive compensation committee) was obligated to determine, fairly and in good faith, whether Lowes was terminated as a result of a total and permanent disability and, therefore, entitled to the stock she claims.  Because neither the board nor the compensation committee ever did so, the court held that Cabletron was not entitled to judgment as a matter of law.  Lowes v. Cabletron, No. 96-077-M, slip op. at 12-13 (D.N.H. December 13, 1996).  The pertinent facts underlying this dispute are set forth in that earlier order.  Nevertheless, the court will briefly address those facts which are relevant to the pending cross motions for summary judgment.

I.   The Stock Awards and Stock Options.

Lowes began working for Cabletron in July of 1985.  As a benefit of her employment, she was awarded 1,750 shares of stock in Gratias Corporation, pursuant to the Gratias Corporation 1989 Restricted Stock Plan.  Although Lowes actually owned all of the

2

shares of stock, they remained "unvested" and subject to forfeiture under certain conditions until they "vested."  Those shares were to have vested according to the following schedule:

1. 5/31/1989 - 250 shares;
2. 5/31/1990 - 500 shares;
3. 5/31/1991 - 500 shares; and
4. 5/31/1992 - 500 shares.

In July of 1989, Lowes received the 250 shares that vested on May 31, 1989.  And, in June of 1990, she received the 500 shares that vested on May 31, 1990.  She claims that because her employment was terminated by reason of a total and permanent disability, she is entitled, under the terms of the Restricted Stock Plan, to the remaining 1000 "unvested" shares of Gratias stock.  In support of her claim, Lowes relies upon the following provision in the Gratias Corporation 1989 Restricted Stock Plan:

> Forfeiture.  Unvested Shares shall be forfeited to the Company if the full-time employment of the Participant with Cabletron and its wholly-owned subsidiaries terminates for any reason, provided, however, that in the event the employment of the Participant terminates by reason of death or permanent disability (as determined by the Board of Directors of the Company in its sole discretion) of the Participant, all Unvested Shares shall immediately become Vested Shares.

Gratias Corporation 1989 Restricted Stock Plan, at para 7(c) (emphasis added).

As an additional benefit of her employment, Lowes was given options to purchase up to 1000 shares of Cabletron stock.

3

Pursuant to Cabletron's 1989 Equity Incentive Plan, those stock options were exercisable according to the following schedule:

      1.   12/20/1989 - 200 shares;
      2.   12/20/1990 - 200 shares;
      3.   12/20/1991 - 200 shares;
      4.   12/20/1992 - 200 shares; and
      5.   12/20/1993 - 200 shares.

In January of 1990, Lowes exercised her option to purchase 200 shares of Cabletron stock, in accordance with the option that became exercisable on December 20, 1989. And, in January of 1991, she exercised her option to purchase 200 additional shares, in accordance with the option that became exercisable on December 20, 1990.

Again, she says that because she was discharged "by reason of" her total and permanent disability, she is entitled under the terms of the Equity Incentive Plan to exercise her options to purchase the remaining 600 shares of Cabletron stock. The Cabletron Systems, Inc. 1989 Equity Incentive Plan provides:

> If a Participant ceases to be an Employee by reason of . . . total and permanent disability (as determined by the Committee), the following will apply:
>
> (a) . . . each Option and Stock Appreciation Right held by the Participant when his or her employment ended will immediately become exercisable in full and will continue to be exercisable until the earlier of (1) the third anniversary of the date on which his or her employment ended, and (2) the date on which the Award would have terminated had the Participant remained an Employee.

4

Cabletron Systems, Inc. 1989 Equity Incentive Plan at para. 7.1 (emphasis added).  Cabletron denies that the foregoing provision entitles Lowes to exercise the disputed stock options.


II.  Lowes' Employment and Disability History.

On May 17, 1990, Lowes left work, claiming that she was unable to function due to stress, anxiety, and depression.  That same day, she sought counseling from Dr. George Hilton, a board certified psychiatrist.  Although she was unable to return to her job at Cabletron, she remained an employee of Cabletron and began receiving long term disability benefits.  In November of 1990, she was admitted to Portsmouth Pavilion hospital for in-patient psychological treatment.  Lowes was diagnosed as suffering from major depression and a mixed personality disorder with obsessive-compulsive and histrionic features.  She was discharged approximately two weeks later.


Also in 1990, Lowes filed a claim for workers' compensation.  After holding a hearing on Lowes' claims, a New Hampshire Department of Labor Hearings Officer denied her request for workers' compensation benefits.  She appealed that decision to the Compensation Appeals Board, which reversed the hearings officer's decision and ruled that, "The claimant is found to be disabled from employment as of May 17, 1990 due to a depressive

5

disorder caused by the condition of her employment." Decision of the Compensation Appeals Board at 3-4 (August 12, 1991).[1]

In January of 1991, Dr. Hilton opined that Lowes was "unable to accomplish the stressful managerial duties that were her routine job while employed at Cabletron." Exhibit 3 to defendant's memorandum. He did, however, note that her "anticipated rehabilitation potential is good," and predicted that she might be able to return to work within six to twelve months. Id. By letter dated April 25, 1991, Cabletron terminated Lowes' employment, effective that day. The termination letter provided that, "[t]he decision [to terminate your employment] was reached following a review of your current employment situation and your undetermined availability to return to suitable work." Exhibit 12 to plaintiff's memorandum.

Approximately three months later, in July of 1991, Dr. Hilton again opined that Lowes was totally disabled and unable "to perform the duties of any occupation, for which she is reasonably qualified by education, training, or experience." Exhibit 8 to plaintiff's memorandum. In August, he reaffirmed his opinion that Lowes was totally disabled as a result of major depression and added that he was unable to predict when (or

---

[1] Based on her depressive disorder, Lowes also applied for Social Security Disability benefits. And, in March of 1992, the Administrative Law Judge who considered her claim ruled that she met the disability insured status requirements under the Social Security Act as of May 17, 1990.

whether) she might be able to return to work.  Exhibit 9 to plaintiff's memorandum.[2]

By letter dated October 7, 1993, Lowes notified Cabletron of her intention to exercise her "stock appreciation rights" (presumably under both the Equity Incentive Plan and the Restricted Stock Plan), asserting that she met the two conditions necessary to exercise those rights: (1) her employment was terminated; and (2) at least in her view, it was terminated "by reason of" her total and permanent disability.  Slightly more than a year later, in December of 1994, Cabletron's Board of Directors considered, at least in part, Lowes' claimed entitlement to the disputed stock.  However, for reasons discussed more fully in the court's previous order, the board ruled that she was not entitled to the stock, concluding that "it was not necessary for the Board to determine whether the termination of her employment occurred by reason of permanent disability."  Letter of Michael Myerow dated December 16, 1994.

Ultimately, however, in March of 1997 (after the court denied Cabletron's first motion for summary judgment), the board and the compensation committee convened to consider Lowes'

---

[2]  Based upon the record presently before the court, it does not appear that Dr. Hilton opined that Lowes was both totally and permanently disabled until approximately September, 1994.  At that time, Dr. Hilton concluded that Lowes was able to function at only a "minimal level" and opined that she was totally and permanently disabled.  Exhibit 6 to defendant's memorandum.

request and to determine whether she was entitled to exercise her stock options. Lowes submitted a brief, to which she attached several exhibits, in support of her claim to the disputed stock. Among other things, Lowes included the various opinion letters from Dr. Hilton. Additionally, Dr. Hilton testified before the board and reiterated his conclusion that Lowes is totally and permanently disabled.

Cabletron also presented the board and the committee with a brief, outlining its view that Lowes was not entitled to the disputed stock. Included in the materials submitted by Cabletron was an opinion letter from Dr. Robert M. Weiner, who had reviewed Lowes' medical records and performed a psychiatric examination. Despite acknowledging fairly compelling evidence to the contrary (e.g., Lowes' psychiatric history, the decision of the Workers Compensation Board, her receipt of SSI benefits, and Dr. Hilton's opinion that she has been totally disabled since 1990), Dr. Weiner concluded that, "In my opinion, Darlene Lowes does not have a mental illness or a psychiatric disorder that disables her from employment." Exhibit 13 to defendant's memorandum.

After accepting the briefs submitted by the parties and hearing the testimony of Dr. Hilton, the members of the board and the compensation committee unanimously agreed that:

> under the Cabletron Plan, the Committee's determination as to whether an employee ceased to be an employee by reason of total and permanent disability would have to

8

be <u>based upon the existence of total and permanent disability at the time of termination of employment and must be made based upon facts and circumstances existing at the time of termination of employment</u>. . . The members of the Committee further agreed that since the Cabletron Plan states that for the vesting of the options to occur, the reason for separation of employment must be permanent and total disability, then a worsening of a condition existing at the time of separation or the failure to cure a condition generally deemed curable at the time of separation would not cause the options to vest, and <u>the medical prognoses available at that time should guide the determination as to whether any disability would be considered permanent and total</u>.

Exhibit 17 to defendant's memorandum (Minutes of March 24, 1997 meeting, at 2-3) (emphasis supplied).

On April 28, 1997, the board passed a unanimous resolution, concluding that Lowes' employment did not terminate by reason of a permanent disability. Accordingly, the board concluded that Lowes was not entitled to the disputed stock in Gratias Corporation. On the same day, the incentive compensation committee passed a similar unanimous resolution, reaching the same conclusion with regard to Lowes' claimed entitlement to the Cabletron stock.

Lowes insists that Cabletron (through its board and the committee) breached the provisions of the Equity Incentive Plan and Gratias Corporation Stock Plan when it determined that her

9

employment was not terminated by reason of a total and permanent disability and refused to tender the disputed stock.[3]

## Discussion

I.   Governing Law Regarding Contract Interpretation.

Under New Hampshire law, the interpretation of a contract presents a mixed question of law and fact.  As the Court of Appeals for the First Circuit has noted, "the general rule is that whether a contract is clear or ambiguous is a question of law . . ..  If the contract is deemed to be ambiguous, then the intention of the parties is a question of fact."  In re Navigation Technology Corp., 880 F.2d 1491, 1495 (1st Cir. 1989)(citations omitted)(cited with approval in Public Service Co. of N.H. v. Town of Seabrook, 133 N.H. 365, 370 (1990)).  The New Hampshire Supreme Court has held that a clause contained in a contract "is ambiguous when the contracting parties reasonably

_____

[3]    In its earlier order, denying Cabletron's first motion for summary judgment, the court noted that:

> neither Lowes nor Cabletron has addressed a potentially
> dispositive legal issue: whether the Employee
> Retirement Income Security Act, 29 U.S.C. § 1001, et
> seq. ("ERISA"), governs plaintiff's claims under either
> (or both) of the employee stock plans and, if so,
> whether her state law contractual claims are preempted.
> Of course, if ERISA governs plaintiff's claims it will
> also affect her right to a jury trial and the
> applicable standard of judicial review.

Lowes v. Cabletron, No. 96-077-M, slip. op. at 13 (D.N.H. December 13, 1996) (citations omitted).  Because neither party has yet addressed whether ERISA governs this dispute, the court will proceed under the assumption that New Hampshire contract law governs the resolution of this matter and that both parties have affirmatively agreed that ERISA does not apply.

10

differ as to its meaning."  Laconia Rod & Gun Club v. Hartford Accident and Indemnity Co, 123 N.H. 179, 182 (1983).  So, while the interpretation of unambiguous contractual provisions presents a question of law, the interpretation of ambiguous contractual provisions presents questions of fact.

II.  The Disputed Contract Language.

The provisions of both the Equity Incentive Plan and the Gratias Corporation Stock Plan at issue in this case are plain and unambiguous.  Contrary to the resolutions adopted by the board and the committee, neither plan requires an employee to present evidence at the time of his or her termination demonstrating that he or she is totally and permanently disabled. The plans merely require that the employee's employment be terminated "by reason of" the disability.  Neither plan requires that Cabletron actually be aware that the employee is disabled.[4]

_____

[4]  Suppose, for example, that a Cabletron employee became totally and permanently disabled as a result of an automobile accident in another state and, because the employee was hospitalized for several weeks, he or she was unable to notify Cabletron of the reason for his or her absence.  If Cabletron were to terminate the employee for failing to show up for work (without knowledge of the underlying accident and the nature and extent of the employee's injuries), it could not, under the terms of the plans as drafted, deny the employee's subsequent request for stock under the terms of the plans.  In short, the employee need only be terminated as a result of the disability.  At the time of termination, Cabletron need not have actual knowledge of the disability.  It is then incumbent upon the board and/or the committee to determine, fairly and in good faith, whether the employee was terminated "by reason of" a total and permanent disability.  It would not do, of course, to say the termination was due to unexplained absence from work when the absence and lack of explanation were due to disability.

11

The decisions by both the board and the committee to limit provisions of the plans (by apparently requiring an employee to present medical evidence at the time of termination that supports his or her claim regarding disability) are invalid efforts to unilaterally modify the terms of those contracts as they apply to Lowes' contractual rights as asserted here.  See, e.g., Guaraldi v. Tans-Lease Group, 136 N.H. 457, 460-61 (1992) ("It is a fundamental principle of contract law that one party to a contract cannot alter its terms without the assent of the other party.").

III. Cabletron's Alleged Breach of the Contracts.

Having interpreted the unambiguous provisions of the governing contracts at issue, the court must next consider whether Cabletron breached those provisions.  That, however, presents a more difficult question.  If the board and/or the committee had merely relied upon the materials submitted by Lowes, the court might properly conclude that, as a matter of law, Cabletron failed to act in accordance with its obligations of good faith and fair dealing when it rejected her efforts to exercise her rights under the stock plans.  Lowes was terminated as a result of her "undetermined availability to return to suitable work."  Exhibit 12 to plaintiff's memorandum.  Plainly, at that time, Lowes was unable to return to work because of her disability.  The evidence on that point is undisputed (and overwhelming).  The only real question is whether her disability

is "permanent."  And, with regard to that issue, the board and the committee were presented with conflicting evidence.

In support of her claim, Lowes submitted the opinion of Dr. Hilton, the findings of the Workers' Compensation Appeals Board, and the findings of the Social Security Administration.  On the other hand, however, Cabletron presented the opinion of Dr. Weiner, who opined that plaintiff is not currently disabled as a result of any "mental illness or psychiatric disorder" (thereby undercutting her assertion that her disability, regardless of its severity in 1991, was, at any time, "permanent").

While Dr. Weiner's opinion (formed based upon a single meeting with Lowes and a review of her medical record) may lack the persuasive value of the substantial evidence to the contrary, it is, nevertheless, sufficient to raise a genuine issue of material fact:  Did the members of the board and the committee act reasonably, fairly, and in good faith when, in the exercise of their discretion, they chose to credit the opinion of Dr. Weiner over the substantial evidence to the contrary.  Resolution of that factual question is properly left to a trier of fact. See, e.g., Kline v Burns, 111 N.H. 87, 93 (1971) ("The existence of a breach [of contract] is usually a question of fact to be determined by the circumstances of each case"); Colonial Life Ins. v. Electronic Data Systems, 817 F.Supp. 235, 244 (D.N.H.

1993) (same).  Accordingly, neither party is entitled to judgment as a matter of law.[5]

## Conclusion

For the foregoing reasons, the existence of genuine issues of material fact precludes the court from concluding that either party is entitled to judgment as a matter of law.  Cabletron's motion for summary judgment (document no. 45) is denied.  Likewise, Lowes' motion for summary judgment (document no. 46) is also denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 25, 1997

cc:  Richard C. Mooney, Esq.
     Andru H. Volinsky, Esq.

---

[5]  Cabletron seems to suggest that Lowes is not entitled to the disputed stock because she has not (and, indeed, cannot) demonstrate that <u>at the time of her termination</u>, she was totally <u>and permanently</u> disabled.  Notwithstanding defendant's assertions to the contrary, however, a trier of fact might reasonably conclude that Lowes was totally and permanently disabled when she was terminated and, therefore, she was terminated "by reason of" her disability.  Crediting Dr. Hilton's opinion and the undisputed facts, a trier of fact could reasonably conclude that: (1) Lowes was unable to perform the duties of her job at Cabletron in May of 1990 because she was totally disabled; (2) as of September, 1994 (the date of Dr. Hilton's opinion letter), Lowes was both "totally and <u>permanently</u> disabled"; (3) Between May of 1990 and September, 1994, Lowes never experienced a period of time during which she was not totally disabled; and, therefore, (4) Lowes has been totally <u>and</u> permanently disabled <u>since May, 1990</u>.

14