NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

3rd Circuit Court – Conway Family Division
No. 2014-617

IN THE MATTER OF TAMMY ROKOWSKI AND SHANE ROKOWSKI

Argued:  June 18, 2015
Opinion Issued:  July 23, 2015

Melendy, Lee & Santuccio, P.A., of Conway (Danielle Richey Santuccio on the brief and orally), for the petitioner.

Donald M. Ekberg, of North Conway, by brief and orally, for the respondent.

DALIANIS, C.J.  The respondent, Shane Rokowski, appeals the final decree in his divorce from the petitioner, Tammy Rokowski.  On appeal, he argues that the Circuit Court (Albee, J.) erred by:  (1) conducting its own internet research to ascertain the value of the marital home; (2) inequitably distributing the parties' assets and debts; (3) awarding the petitioner permanent lifetime alimony of $750 monthly; and (4) requiring him to pay certain expenses while the divorce was pending.  We affirm in part, vacate in part, and remand.

I.  Background

The trial court found, or the record contains, the following facts.  The parties married in 1990.  When they married, the petitioner was 21 years old and a high school graduate.  She was employed full-time by Cuisinart with

which she has a small 401(k) account.  After the parties married, the petitioner worked outside the home until 1995, when their eldest son was born.  The parties' two sons are now both over 18.

Before 2006, the family lived in Norwich, Connecticut, in a two-family home owned by the respondent's grandparents until 1997, when they conveyed the home to the respondent, reserving a life estate for themselves.  The home has two residential units:  the respondent's grandparents lived in the upstairs unit, and the parties and their children lived in the downstairs unit.

The respondent works primarily as a self-employed plumber.  He also has a seasonal snow plowing business.  The petitioner was a bookkeeper for the plumbing and snow plowing businesses, although she did not receive taxable wages for her work.  In 2004, the parties began a fireworks business for which the petitioner acted as a bookkeeper, worked at a store front, and "did tent sales."  The respondent is the sole proprietor of the plumbing, snowplowing, and fireworks businesses.

According to the respondent, his businesses were lucrative and produced substantial cash proceeds.  Because the parties had minimal living expenses, they and their children were able to take vacations to New Hampshire and Jamaica.  They also skied and owned snowmobiles.  The parties' bank accounts were maintained in the respondent's name, and he paid cash for the family's expenses.

In 2006, the petitioner and the children moved to a rented home in New Hampshire because the parties were planning to open a fireworks business here.  The respondent remained in Connecticut, although he visited the family on the weekends.  For a time while in New Hampshire, the petitioner worked part-time as a caregiver for a disabled child and as a telemarketer for a local inn.  She ceased doing so in 2010.

Beginning in 2010, the parties began to argue and their relationship began to deteriorate.  In September 2011, the petitioner filed a petition for a domestic violence final order of protection and a petition for divorce.  By agreement of the parties, the order of protection remained a temporary order; it was dismissed as part of the final divorce decree.

Following a two-day final hearing held in 2013, the court granted the parties a divorce based upon irreconcilable differences.  The respondent unsuccessfully moved to reconsider, and this appeal followed.

II.  Analysis

A trial court has broad discretion in fashioning a final divorce decree and in managing the proceedings before it.  In the Matter of Spenard & Spenard,

167 N.H. 1, 3 (2014). We will not overturn a trial court's rulings absent an unsustainable exercise of discretion. Id. This means that we review the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgment. Id.

### A. Internet Research, Equitable Distribution, and Alimony Award

We first consider the respondent's arguments regarding the court's internet research, property distribution, and alimony award. The parties' primary assets were the marital home in Connecticut and the respondent's businesses. Neither party provided the trial court with formal appraisals of the home or the businesses.

The court valued the marital home at $150,000 as of the date of the 2014 final divorce decree and awarded it to the respondent; however, the court ordered him to pay the petitioner $75,000 and mandated that the debt be secured by a mortgage. The court also awarded the businesses to the respondent. The court stated that the $75,000 the petitioner was to receive included her equitable interests in those businesses.

To determine the value of the marital home and to choose a valuation date, the court relied upon "information supplied by [the respondent] from an on-line service, up-dated information the court was able to obtain by using a similar on-line service," and "tax records." The "on-line service" upon which the trial court relied was "Zillow," see Yahoo!-Zillow Real Estate Network, http://www.zillow.com (last visited July 16, 2014), a website that "offers free residential real-estate estimates along with other tools for real-estate buyers and sellers." Edwards, Selected Online Sources for Valuing Estate Assets, 86 Mich. B.J. 52, 52 (2007). Zillow provides an estimated value for a home called a "Zestimate." Id. "[T]he Zestimate is not calculated using individual home appraisals by Zillow employees, but is calculated from public and user submitted data." Bellin & Ferguson, Trial by Google: Judicial Notice in the Information Age, 108 Nw. U. L. Rev. 1137, 1179 (2013-2014) (quotation omitted). "Realtors, homeowners, and others submit data to the website and to local government agencies, and Zillow collects the data and runs it through a secret algorithm to estimate the value of properties." Id. "Zillow does not itself obtain the data [upon which it relies to estimate property values] or test it for accuracy." Id.

The trial court relied upon its internet research to evaluate the respondent's comparable sales data, which consisted of the tax records for homes on the same street as the marital home. For instance, the tax record for one home demonstrated that, although it was assessed at $160,000, it sold in 2011 for $76,862. The trial court observed that "[a]ccording to [the] Zillow web site, . . . this same property sold [in 2013] for $116,472[,] [s]uggesting the property may have been a short-sale to avoid foreclosure." Similarly, the tax

record for another home showed that it was assessed at $146,000 and sold in 2011 for $82,000.  The trial court noted that Zillow estimated the property's value to be $103,222 and indicated that the property was again for sale.  The tax record for a third potential comparable sale demonstrated that the home was assessed at $126,000, although it sold in 2012 for $40,000.  The court stated that Zillow estimated the property's resale value as $112,649.

The trial court also relied upon its internet research to choose a valuation date, finding that the area where the home is located "is experiencing a recovery with sales or projected sales prices reflecting other than foreclosure or short-sale pricing," and, thus, choosing to value the home as of 2014 (when the decree was issued) instead of 2011 (when the petition was filed).

The respondent argues that the trial court erred when it relied upon its own internet research to ascertain the home's value and to choose a valuation date.  We agree.

It is axiomatic that a trial court "cannot go outside of the [evidentiary] record except as to matters judicially noticed."  Morse v. Allen, 45 N.H. 571, 572 (1864); see In re Schrag, 464 B.R. 909, 914 (Bankr. D. Or. 2011) ("It is a basic principle of jurisprudence . . . that the court may not introduce its own evidence into a proceeding.").  Doing so is "inconsistent with the established role of the trial court in adversary litigation."  Klemow v. Time Incorporated, 352 A.2d 12, 14 n.3 (Pa. 1975).

Under New Hampshire Rule of Evidence 201, the circumstances under which a judge may judicially notice a fact are limited.  See N.H. R. Ev. 201.  Although the rules of evidence do not apply to divorce cases, the trial court, in such a case, "may utilize the New Hampshire Rules of Evidence to enhance the predictable, orderly, fair, and reliable presentation of evidence."  Fam. Div. R. 2.2; see N.H. R. Ev. 1101(d)(3).  Moreover, even when the rules of evidence do not apply, "some degree of trustworthiness" is required "for evidence to be admissible."  State v. Ploof, 162 N.H. 609, 620 (2011).  Accordingly, we find Rule 201 instructive.

Under Rule 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  N.H. R. Ev. 201(a).  Here, we conclude that Zillow's "Zestimate" is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Id.; see Bellin & Ferguson, supra at 1179 (explaining that "Zillow's Zestimate of [a] house's value fails to attain the requisite status as a fact 'that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'").

Appellate courts in other jurisdictions have found reversible error when a trial court relies upon internet information from outside of the evidentiary record that fails to meet the standard for judicial notice. See Rutanhira v. Rutanhira, 35 A.3d 143, 147-48 (Vt. 2011) (holding that trial court committed reversible error when it conducted an internet search after the close of evidence and the information upon which it relied was unacceptable under the rules of judicial notice); Tribbitt v. Tribbitt, 963 A.2d 1128, 1130-31 (Del. 2008) (concluding that trial court could not reject unrefuted expert testimony about wife's earning capacity based, in part, upon trial court's outside-of-the-record computer search of potential jobs available to wife). We reach the same conclusion here and hold that, because the trial court relied, in part, upon Zillow's "Zestimates" to ascertain the home's value and choose a valuation date, the court erred. Because the marital home was one of the parties' most significant assets, we vacate the trial court's distribution of the marital property.

Because we have vacated the court's distribution of marital property, we decline to address the respondent's arguments that the trial court improperly: (1) referred to, and allegedly considered when distributing the property, his drinking, hiding income, domestic violence, and alienation of the parties' children; (2) divided the parties' debts unequally; and (3) awarded the petitioner any interest in his businesses.

For the same reason, we also decline to address the respondent's arguments about the alimony award. Because the trial court based its alimony award in part upon "the asset distribution," and because we have vacated that distribution, we also vacate the alimony award.

B.  Payment of Expenses Incurred During Divorce

We next consider the respondent's arguments regarding expenses he was required to pay, which were incurred while the divorce was pending. In its final decree, the court reiterated orders that it had previously issued making the respondent responsible for paying certain expenses, including 50% of the medical bills incurred before the divorce petition was filed and 100% of the guardian ad litem's fees. On appeal, the respondent argues that the petitioner should be responsible for all unpaid medical bills incurred before the divorce was filed and that the court miscalculated certain amounts it ordered him to pay.

We are unable to address the respondent's arguments substantively because he has failed to provide a sufficient record for our review, as was his burden as the appealing party. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). The respondent has not provided the record of the earlier proceedings upon which the trial court relied when, in the final decree, it ordered him to pay the challenged expenses. Nor has he provided copies of the

5

trial court's prior orders regarding those expenses.  Moreover, although the respondent has provided the transcripts of the final divorce hearing and some of the exhibits from that hearing, he has not provided all of those exhibits, including the parties' financial affidavits.  Absent a complete record, we must assume that the evidence presented supported the trial court's findings, and our review is limited to legal errors apparent on the face of the record.  See Rix v. Kinderworks Corp., 136 N.H. 548, 553 (1992).  The respondent has not demonstrated that the trial court committed legal error when it ordered him to pay the challenged expenses.  Accordingly, we affirm this portion of the final divorce decree.

The respondent has raised certain constitutional arguments that he has failed to demonstrate were preserved for our review.  See Bean, 151 N.H. at 250.  He argues, for instance, that the property distribution in this case violates Part I, Article 14 of the New Hampshire Constitution.  He also argues that the delay between 2013, when the final divorce hearing occurred, and 2014, when the trial court issued its decision, violated Part I, Article 14.  Further, he contends that RSA 458:16-a, II (2004) violates the separation of powers doctrine.  See N.H. CONST. pt. I, art. 37.  Because the respondent has failed to demonstrate that he raised these constitutional claims in the trial court, we decline to consider them on appeal.  Further, any issues that the respondent raised in his notice of appeal, but did not brief, are deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed in part; vacated in part; and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

6