# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2023-0053, <u>Maria Melekos v. Wanda Cote</u>, the court on October 16, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Wanda Cote, appeals a small claim judgment in the amount of $6,000 plus interest and costs issued by the Circuit Court (<u>Weaver</u>, J.), following a bench trial, in favor of the plaintiff, Maria Melekos, on her claim for breach of contract. We construe her brief to argue that the trial court erred by awarding damages in an amount that is, she asserts, excessive and inconsistent with the terms of the parties' contract, and by determining that the parties agreed to modify the contract. We affirm.

The trial court found, and the defendant does not dispute on appeal, that on April 2, 2020, the parties entered into a contract for the sale of a labradoodle puppy for $1,100. The contract's express terms "guarantee[d] the puppy to be in good health at the time of sale," and not to have any "transmissible diseases, such as parvovirus." Notwithstanding these guarantees, the contract also stated that the seller "is NOT RESPONSIBLE for any or part of any vet bills," that "[o]nly puppy replacements will be made," and that "[t]here will not be any cash refunds."

Shortly thereafter, the defendant posted a notice on the internet stating that "[i]n the recent past, we discovered that a puppy from our home was diagnosed with the Parvo Virus," that "[w]e have contacted each and every individual who bought a puppy from us since April 1, 2020 to make them aware of the possibility that their puppy may have been exposed to the Parvo Virus," and that "[w]e fully refunded the new owner who alerted us to the infection, and reimbursed them for their costs." The posting further stated that "[w]e intend to do the same for any new owner who wishes to return their puppy if it tests positive for Parvo, and/or cover reasonable costs associated with its treatment, including testing, medication, and hospitalization for Parvo." The plaintiff's dog in fact became ill on April 6, 2020. On April 7, the defendant sent the plaintiff a text message alerting her that other puppies from the same litter had tested positive for parvovirus and urging her to have her dog tested; later that day, the plaintiff's dog tested positive for parvovirus.

The parties then engaged in what the plaintiff described as "a ridiculous amount of text messages" spanning numerous pages of an exhibit that the plaintiff introduced at trial discussing the matter. According to the plaintiff's

testimony, the defendant "acknowledged responsibility [in the texts] . . . and said that she would do whatever [was] needed to make it right," including reimbursing the plaintiff for veterinary fees. The record on appeal, however, contains only a single page of a brief text message exchange. In that text exchange, expressly relied upon by the trial court in its order, the plaintiff notified the defendant that her dog was hospitalized, that she was "looking at almost $4,000 already" in addition to what she had paid for the dog, and that that amount was "more than [her] entire savings account." The defendant responded by stating that she was "taking responsibility for now," and requesting copies of the plaintiff's bills. According to the trial court, the defendant also sent the plaintiff a text "asking for bills actually paid, and not the amount of any deposits paid since the deposits could be refunded."

At trial, the plaintiff argued that the parties' communications, including the defendant's offer to "cover reasonable costs associated with [the] treatment" of parvovirus for anyone who had purchased a dog from her infected with the virus after April 1, "including testing, medication and hospitalization for Parvo," resulted in a modification of the parties' contract. It was in reliance upon this promise, according to the plaintiff, that she sought treatment for the dog, including hospitalization, incurring costs of approximately $9,000. She sought the full amount of the costs that she had incurred to treat the dog. Although the defendant disputed that she agreed to modify the contract, she admitted that she offered to pay reasonable costs for the testing, treatment, medication, and hospitalization of dogs she sold after April 1 that were infected with parvovirus.

The trial court found that the defendant "affirmed on several occasions that she was paying for the costs of treatment for the dog," and that she "agreed to pay the reasonable costs [for the dog's] testing, treatment and hospitalization." However, "as the costs started to rise," the trial court found that the defendant "began to express concern about whether the costs were reasonable." According to the trial court, the defendant ultimately claimed that, notwithstanding the provisions of the contract stating that "[o]nly puppy replacements will be made" and "there will not be any cash refunds," under the contract "she was only responsible for the $1100 purchase price."

In ruling in favor of the plaintiff, the trial court observed that the contract contained an express "guarantee against parvovirus," that the defendant "further defined [the guarantee] . . . to provide for the payment of the reasonable costs of all tests, treatment and hospitalization," through her website posting, and that the parties' text messages established "that the defendant interpreted that to mean costs up to at least $4,000.00 since [the defendant] responded to the plaintiff's text about billings in that amount by admitting she was taking responsibility 'for now.'" Within the context of the evidence and arguments presented at trial, we construe the trial court's order

2

as determining that the parties had modified the April 2, 2020 contract to provide for the reimbursement of reasonable veterinary costs incurred by the plaintiff in treating her dog for parvovirus.  See In the Matter of Salesky & Salesky, 157 N.H. 698, 702-03 (2008) (stating that the interpretation of a trial court order is a question of law subject to de novo review, to be construed in reference to the issues it was intended to decide).  The trial court ultimately determined that, based upon information in the text messages regarding the costs that other dog owners who had purchased dogs from the plaintiff had incurred, $9,000 was "at the very top of the range of costs incurred and . . . well beyond anything the defendant believed would be incurred when the contract was made between the parties," but that "$6,000.00 [was] reasonable reimbursement for the costs claimed by the plaintiff."  This appeal followed.

It is well established that parties to a contract may modify its terms by either an express or implied mutual agreement to that effect, so long as the parties mutually assent to the terms of the modification.  See RSA 382-A:2-209 (2011) (amended 2022) (allowing modification and waiver of terms of a contract for the sale of goods); see also Walker v. Percy, 142 N.H. 345, 349 (1997); Guaraldi v. Trans-Lease Group, 136 N.H. 457, 460-61 (1992).  Such an agreement to modify may generally be inferred from the parties' conduct.  Guaraldi, 136 N.H. at 461.  Whether a contract has been modified is a question of fact, and we will not disturb the trial court's findings unless they are unsupported by the evidence or tainted by error of law.  Walker, 142 N.H. at 349; Guaraldi, 136 N.H. at 461.  Our role is not to determine whether we would have found differently, but whether a reasonable person could have found as the trial court did based on the same evidence.  Guaraldi, 136 N.H. at 461.  We defer to the trial court's assessment of the credibility of the witnesses and the weight of the evidence presented.  See id.; Maville v. Peerless Ins. Co., 141 N.H. 317, 320 (1996).

It is the burden of the appealing party, here the defendant, to provide so much of the record as is required to decide the issues raised.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  We assume that relevant portions of the record not provided on appeal, including trial exhibits, support the result reached by the trial court.  See id.; see also In the Matter of Rokowski & Rokowski, 168 N.H. 57, 62 (2015) (applying Bean to appealing party's failure to provide exhibits admitted into evidence at evidentiary hearing).

In this case, the portions of the record provided on appeal support the trial court's findings that the parties modified their contract to obligate the defendant to reimburse the plaintiff for reasonable veterinary costs incurred in treating the dog for parvovirus, and that $6,000 was a reasonable amount for the costs the plaintiff incurred.  Moreover, we must assume that those portions of the trial exhibits that the plaintiff has not provided on appeal support these findings.  See Rokowski, 168 N.H. at 62.  Accordingly, we conclude that the

3

trial court's decision was neither unsupported by the evidence nor tainted by error of law.  Guaraldi, 136 N.H. at 461.  Any remaining arguments in the defendant's brief are not sufficiently developed to warrant further discussion.  See State v. Blackmer, 149 N.H. 47, 49 (2003) (stating that we confine our review on appeal to those issues that are fully briefed).

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**