Merrimack
No. 87-485

## New Hampshire Bituminous Company, Inc.

### v.

## TAB Aviation, Inc.

July 27, 1989

39

*Hall, Morse, Gallagher & Anderson,* of Concord (*Charles P. Bauer* on the brief and orally), for the plaintiff.

*Sulloway Hollis & Soden,* of Laconia (*John P. Chandler* on the brief and orally), for the defendant.

THAYER, J. The plaintiff, New Hampshire Bituminous Company, Inc., brought suit against the defendant, TAB Aviation, Inc., to recover on a contract entered into by the plaintiff and the alleged agent of the defendant, Richard Bleakney. The Superior Court (*Dickson,* J.) entered judgment for the plaintiff and further ordered the defendant to pay the plaintiff's costs and attorney's fees. The defendant now appeals, and we affirm in part and reverse in part.

In July 1984, the defendant purchased at a foreclosure sale property in Moultonboro containing the Moultonboro Airport. Prior to that time the airport had been owned and operated by Moultonboro Airport, Inc. (MAI). At all times relevant to this case, Richard Bleakney was the chief owner and executive officer of MAI. After the foreclosure sale, Mr. Bleakney and MAI continued to operate the airport through an arrangement with the defendant, the exact nature of which was the subject of considerable dispute at trial. At no time, however, was Mr. Bleakney an officer or director of the defendant corporation.

In May 1985, the New Hampshire Aeronautics Commission ordered the airport closed because the runway needed repair. Shortly thereafter, Mr. Bleakney contacted the plaintiff and another contractor, Robert Dunlap, regarding the necessary repairs. In June 1985, Thomas Condon, an officer and owner of the defendant corporation, also spoke with several contractors regarding the repairs and eventually hired Mr. Dunlap to regrade the runway in order to prepare it for resurfacing. It is undisputed that the defendant paid for all work performed by Mr. Dunlap.

Also in June 1985, Mr. Bleakney ordered several thousand gallons of liquid asphalt from the plaintiff for the resurfacing of the runway. The plaintiff delivered and applied the asphalt to the prepared portions of the runway without receiving any advance deposit from Mr. Bleakney. In July 1985, without yet having received payment for the first delivery, the plaintiff applied a coat of sealing oil to the prepared sections of the runway, as well as to several unprepared areas including the driveway and the tie-down and parking areas. The plaintiff submitted invoices totaling $19,092.51 to "Moultonboro Airport." At the time of contracting, performance, and submission of the invoices, the plaintiff was unaware that the defendant was the owner of, or was in any way affiliated with, the Moultonboro property. The plaintiff had in the past contracted with Mr. Bleakney "as the owner of Moultonboro Airport."

After several unsuccessful attempts to obtain payment from Mr. Bleakney, at some point in August or September 1985 the plaintiff learned about and contacted the defendant. When the defendant refused to pay the outstanding bills, the plaintiff brought an action against the defendant as the undisclosed principal of Mr. Bleakney on theories of breach of contract and unjust enrichment. The plaintiff also sought to recover attorney's fees on the basis that the defendant had acted in bad faith in forcing the plaintiff to invoke judicial assistance in enforcing its claim.

The trial court found that "Mr. Bleakney . . . was acting on the apparent authority of his principal, the defendant," and that "to most of the world, Mr. Bleakney was manager of the Moultonboro airport with authority to procure supplies and make repairs reasonably necessary for the proper conduct of the business," including the repairs in question. The court determined, therefore, that the defendant was liable on the contract because "[t]he defendant's principle [sic] owner, an attorney duly licensed to practice law in the State of New York, knew or should have known" that (a) an undisclosed principal, when discovered, may be held liable on a contract made on its behalf by its "duly authorized agent," although the contract was originally made with the agent in ignorance of the principal; and (b) a principal is bound by the promise of its general agent, whether or not authorized, when the promise of the agent is made within the scope of the agent's apparent authority. In addition to entering judgment for the plaintiff for the contract price, the trial court awarded the plaintiff attorney's fees on the basis that the defendant had acted in bad faith

by "hid[ing] from this black letter law" and forcing the plaintiff to invoke judicial assistance to secure "its clear right of payment."

The defendant argues on appeal that (1) the trial court ruled solely on the basis of apparent authority, but to the extent that the trial court's order may be construed as a finding of actual authority, such a finding is unsupported by the evidence; (2) the trial court erred in finding apparent authority where the alleged principal was undisclosed; and (3) the trial court erred in assessing attorney's fees where the defendant asserted a legitimate, good faith defense.

■ We address initially the defendant's claim that the trial court determined liability solely on the basis of apparent authority. We agree that the trial court's blurring of the various theories of agency in its written order renders its decision somewhat ambiguous. Part of the confusion arises from the trial court's mistaken reference to *Holman-Baker Co. v. Pre-Design Co.*, 104 N.H. 116, 179 A.2d 454 (1962) as a case involving apparent agency. However, it is a well settled rule of appellate review that regardless of the authority cited by the trial court, reversal is unwarranted where the trial court reached the correct result. *E.g., Topjian Plumbing & Heating, Inc. v. Bruce Topjian, Inc.*, 129 N.H. 481, 485, 529 A.2d 391, 394 (1987). In this case, although it is unclear which theory (or theories) of agency the trial court relied upon in determining the ultimate issue of liability, the court granted the plaintiff's request for a factual finding that the defendant had "authorized Bleakney, as airport manager, to make arrangements for repairs to the airport runway. . . ." Further, the court in its order also cited *Manchester Supply Co. v. Dearborn*, 90 N.H. 447, 10 A.2d 658 (1940), a case in which the liability of the undisclosed principal turned on a factual determination of whether the principal had expressly authorized the alleged agent to contract on her behalf. We will therefore uphold the trial court's ruling on the basis of express authority if such a finding is supported by the record.

■ The standard to be applied in reviewing the trial court's factual findings is narrow. We will uphold the trial court's findings unless they are lacking in evidentiary support or erroneous as a matter of law. *E.g., Concord Steam Corp. v. City of Concord*, 128 N.H. 724, 727, 519 A.2d 266, 269 (1986). "'Our function in reviewing the trial court's findings is not to decide whether we would have found differently but to determine whether a reasonable person could find as did the trial judge.'" *Liberty Mut. Ins. Co. v.*

*Custombilt, Inc.*, 128 N.H. 167, 170, 512 A.2d 1098, 1100 (1986) (citation omitted).

Thomas Condon, president of the defendant corporation, testified at trial that the relationship between the defendant and Mr. Bleakney (and MAI) was that of landlord and tenant, and that the defendant "never was in the airport business." Mr. Condon further testified that Mr. Bleakney had agreed as part of his lease to make repairs to the property. When, however, according to Mr. Condon, it became apparent that Mr. Bleakney would be unable to cover the total cost of the runway repairs, the defendant had agreed to arrange for and to bear the expense of only the regrading work. In support of this claim, the defendant introduced in evidence a printed invoice from the plaintiff to "Moultonboro Airport" for the first asphalt delivery on which Mr. Bleakney had handwritten: "Tom—I won't be able to pay this until later—Dick." The defendant alleged that this notation indicated that Mr. Bleakney acknowledged his responsibility for payment of the plaintiff's bill.

The defendant also introduced in evidence a signed purchase and sale agreement for the airport property dated several days prior to the 1984 foreclosure sale. The agreement between the seller, MAI, and the buyers, Mr. Condon and Burton Allyn, the owners of the subsequently formed defendant corporation, provided that "Seller agrees to give buyer a three year net lease to occupy premises at the monthly rental of 1,000. . . . Seller agrees that 15,000.00 of the purchase price will be held in escrow until the runway repairs[,] . . . installation of septic system[,] . . . and maintenance and repair of drive way [sic] and parking arears [sic] are completed." Mr. Condon testified that although the anticipated pre-foreclosure sale never took place, "[w]hen the foreclosure took place, the purchase was for the same price and the identical terms [that the defendant and Mr. Bleakney had] agreed would apply to [Mr. Bleakney's] occupancy of the airport." The foreclosure deed contained no similar restrictions, however, and Mr. Condon admitted that no post-foreclosure written lease containing the repair terms was ever executed by the defendant and Mr. Bleakney.

Mr. Bleakney admitted at trial that as the president of MAI, he had obtained a commercial operator's license for the airport in the name of MAI; he had collected and retained the revenue from and paid the expenses of operating the airport; and he had paid at least one "lease" payment to the defendant as the owner of the property. Mr. Bleakney denied, however, that he initially had agreed to pay for the repair of the runway. He testified that he was authorized by the owners of the airport to hire the plaintiff, and that the

defendant was responsible for paying for the work performed by the plaintiff. Mr. Bleakney also testified that after the plaintiff had performed the repair work, Mr. Condon had suggested to Mr. Bleakney that he "assume the liability for the New Hampshire Bituminous payment and then file full seven bankruptcy." Mr. Condon denied this allegation as well as Mr. Bleakney's claim that the defendant had authorized him to enter into a repair contract on the defendant's behalf.

■■■■ The evidence presented in this case regarding whether the defendant had expressly authorized Mr. Bleakney to enter into the repair contract on its behalf was, as the trial court noted, "considerable and conflicting." Where Mr. Bleakney's and Mr. Condon's testimony conflicted, however, it was within the province of the trial court as the fact-finder to assess the credibility of and the weight to be accorded each witness' testimony. *Liberty Mut. Ins. Co. v. Custombilt, Inc.*, 128 N.H. at 170, 512 A.2d at 1100. With regard to the handwritten note from Mr. Bleakney to Mr. Condon which the defendant presented as an admission of Mr. Bleakney's liability on the contract, the trial court apparently accepted Mr. Bleakney's explanation that it merely referred to his plan to make a capital contribution at some later date for an ownership interest in the airport. Moreover, the trial court may properly have afforded little weight to the repair provisions contained in the pre-foreclosure purchase agreement, in light of the conflicting testimony regarding the agreement and the questionable legal significance of its terms. Based upon our review of the record, therefore, we hold that the trial court could reasonably have found that the defendant authorized Mr. Bleakney to contract with the plaintiff on the defendant's behalf for the repair of the runway. *See id.*

■■■■ It is well settled that a creditor has a right of action against an undisclosed principal, when subsequently discovered, if the right is exercised within a reasonable period of time, and if the creditor can prove that the agent's acts were within the scope of the agent's authority. *Manchester Supply Co. v. Dearborn*, 90 N.H. at 448–49, 10 A.2d at 659 (citations omitted). No suggestion has been made that the plaintiff in this case failed to elect within a reasonable time to exercise its right against the defendant. The trial court therefore properly found the defendant liable on the contract as an undisclosed principal. Because we uphold the trial court's ruling on the basis of actual authority, we need not address

the second issue raised by the defendant, whether an undisclosed principal may be held liable on the basis of apparent authority.

We next address the issue of attorney's fees. The trial court found that the defendant's hiding from "black letter" principal and agent law to avoid liability constituted bad faith and thus formed the proper basis for an award of attorney's fees. Because the record does not support such a finding, we reverse.

The superior court may order a party "who has instituted or prolonged litigation through bad faith or obstinate, unjust, vexatious, wanton, or oppressive conduct" to pay the opposing party's counsel fees. *Harkeem v. Adams*, 117 N.H. 687, 688, 377 A.2d 617, 617 (1977). An order of attorney's fees on the basis of bad faith is appropriate where "an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention." *Id.* at 691, 377 A.2d at 619. The record in this case, however, does not support the trial court's finding that the defendant's assertion of the following defenses was such an "arrogant disregard of the plaintiff's rights" as to constitute bad faith.

The evidence presented relative to Mr. Bleakney's express authority was, in the words of the trial court, "considerable and conflicting." Although the trial court ultimately resolved the factual dispute in favor of the plaintiff, and we uphold that finding, the issue was, at the very least, substantially contested.

Moreover, the defendant's potential liability on the basis of the various other theories of agency addressed by the trial court was not such a "clearly defined and established right" that the plaintiff should not have been forced to litigate the issue. *See Harkeem v. Adams, supra* at 691, 377 A.2d at 619. While we do not decide the issue in this case, there is authority for the proposition that, although there can be actual authority where the principal is undisclosed, "there can be no apparent authority created by an undisclosed principal." RESTATEMENT (SECOND) OF AGENCY § 8 comment *a*, at 31; *id.* § 194 comment *a*, at 430. The defendant's liability as a principal under the *Holman-Baker* case cited by the trial court is equally questionable. In finding the defendant liable as a principal in *Holman-Baker Co. v. Pre-Design Co.*, 104 N.H. 116, 179 A.2d 454, this court emphasized that the alleged agent was the president, treasurer, director and manager of the defendant corporation. *Id.* at 118–19, 179 A.2d at 456. In the present case, the alleged agent was never an officer or director of the defendant corporation. Furthermore, although the plaintiff denied the

defendant's claim that Mr. Bleakney was merely a tenant on the defendant's property, the plaintiff presented no evidence that the defendant corporation ever received any revenue from the operation of the "airport business" other than the payment of rent for the occupation of the premises.

*Affirmed in part and reversed in part.*

All concurred.