606 A.2d 532

## TURNER HYDRAULICS, INC.

v.

## SUSQUEHANNA CONSTRUCTION CORPORATION and George Forbes and Forbes Chevrolet.

### Appeal of FORBES CHEVROLET, INC.

Superior Court of Pennsylvania.

Argued March 10, 1992.

Filed April 27, 1992.

**132**

Hillel Levinson, Harrisburg, for appellant.

James G. Gault, Carlisle, for appellee.

Before POPOVICH, HUDOCK and HESTER, JJ.

POPOVICH, Judge:

This case involves an appeal from the judgment entered in favor of the plaintiff, Turner Hydraulics, Inc., and against the defendant, Forbes Chevrolet, Inc. in the amount of $50,532.86 (plus interest).[1] We affirm.

██ On appeal, the defendant challenges the trial court's refusal to enter judgment *non obstante veredicto*. Our sole duty in assessing such a claim is to decide whether there was sufficient evidence to sustain the verdict, granting the verdict-winner the benefit of every favorable inference reasonably to be drawn from the evidence. *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251, 254 (1980). All unfavorable testimony and inferences must be rejected. *Smith v. Kravitz*, 173 Pa.Super. 11, 93 A.2d 889 (1953). In compliance with such standards, the following facts, as warranted by the evidence and established by the verdict, appear.

On or about November 13, 1986, George Forbes, the president and sole stockholder of Forbes Chevrolet, Inc., contracted with Susquehanna Construction Corporation to erect a new facility to house his dealership. Susquehanna subcontracted a portion of the work to Turner Hydraulics,

---

1. The plaintiff also filed suit against the general contractor (Susquehanna Construction Corporation) and the owner of the Chevrolet dealership (George Forbes), in his individual capacity. With regard to these parties, the court ruled in favor of Mr. Forbes and against Susquehanna. No appeal has been filed challenging these rulings.

Inc., which was operated by Billy Ray Turner (president) and his son, Danny Lee Turner (vice-president).

In late November of 1986, Danny Lee Turner submitted a bid on the Forbes project. Prior to commencing work, however, Danny Lee Turner realized that he had neglected to include the cost of 4 items (valued at approximately $10,000.00) in the bid accepted by Susquehanna.

To determine whether payment would be made for the excluded items, Turner spoke with Frank Black, an 18–year parts and service manager for Forbes Chevrolet, Inc. At the worksite, any questions Turner had would be directed to Black. Specifically, with regard to the items missing from the bid, Black told Turner:

> ... Mr. Forbes is a fair and honest man, ... he will make sure it is taken care of, whether it is taken care of by Susquehanna alone or [Forbes] takes care of it. [Turner] w[ould] be paid for it.

N.T. 10/3/90 at 14. This made Turner feel "one hundred percent better."

Prior to completion of construction, the employees of Turner Hydraulics, Inc. were ordered off the job by Billy Ray Turner on two occasions, once in early February and again in March of 1987, for Susquehanna's failure to pay. After each incident, Frank Black phoned Billy Ray Turner and "assured" him that he would be paid "one way or the other", that George Forbes was a "fair man" and that Forbes would see to it that Turner Hydraulics, Inc. would be paid. Susquehanna ultimately did make partial payment to Turner.

The Turners resumed work because of Black's assurances that they would receive payment. Id. at 64. This position was stated consistently throughout the plaintiff's case; to-wit:

> [Counsel for defendant-Forbes Chevrolet, Inc.:]
> Q Now, is that how he [Black] indicated it to you, to the best of your recollection, I will see that you get paid?
> [Billy Ray Turner:]

A One way or the other.

Q Well, and you are saying he said one way or the other?

A Yeah. If Susquehanna doesn't, George Forbes would.

Q But he didn't say that, did he?

A Frank Black said that.

Q No. He didn't say George Forbes would, did he?

A He did.

N.T. 10/3/90 at 62.

Frank Black testified that Mr. Forbes gave him the "responsibility of designing everything" at the new dealership, e.g., service write-up area, service department, parts department, body shop and show room. In fact, Black described himself as *"sort of the Forbes Chevrolet, Inc. representative on the scene...."* (Emphasis added)

Further, Black would be at the site every day to talk to each subcontractor and resolve any problems which might arise, e.g., general contractor's (Susquehanna's) non-payment of wages to subcontractors. When this did occur, Black would do everything he could, as the representative of Forbes Chevrolet, Inc., to pressure ("ride herd" over) the general contractor to pay.

Black admitted "assuring" the Turners that he "would do everything in [his] power to get them paid. * * * [He] told [the Turners] that Mr. Forbes was a very fair and honest man. And that [the two] would do, together, ... everything one could to get them paid." Id. at 86, 89–90.

However, Black denied informing the Turners that either George Forbes or Forbes Chevrolet, Inc. would pay if Susquehanna defaulted. Id. at 91. Nonetheless, he conceded that when he informed the Turners that he would do everything to assure payment, *he never qualified the statement* with the caveat that payment would be forthcoming the subcontractors from Susquehanna. Id. at 95.

George Forbes stated that "at no time" did he authorize Black to execute any contract(s) for Forbes or Forbes

Chevrolet, Inc. Black was merely the "service and parts director" for the dealership.

At the completion of the non-jury trial, the court entered a verdict in favor of the plaintiff and against Forbes Chevrolet, Inc. See note 1, supra. In an opinion in support of the award, the court concluded that Black was Forbes Chevrolet, Inc.'s "agent" whose "assurances" to the Turners "induced" them to return to work in the face of non-payment by Susquehanna. Once the verdict was reduced to judgment, this appeal was perfected.

The sole question, as we view the case, is whether the defendant-Forbes Chevrolet, Inc. entered into a contract, through its employee-Frank Black, with the plaintiff.

It is a general rule of law that the principal in a principal/agent relationship is only "bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agent's employment...." 3 Am.Jur.2d, Agency § 261.

█ In this Commonwealth, the doctrine of apparent authority has been incorporated into the principles of agency law. See *Bolus v. United Penn Bank*, 363 Pa.Super. 247, 525 A.2d 1215, 1221 (1987), appeal denied, 518 Pa. 627, 541 A.2d 1138 (1988). Apparent authority exists where a principal, *by words or conduct*, leads people with whom the alleged agent deals to believe that the principal has granted the agent authority he or she purports to exercise. *Stallo v. Insurance Placement Facility of Pa.*, 359 Pa.Super. 157, 518 A.2d 827 (1986), appeal denied, 515 Pa. 609, 529 A.2d 1082 (1987).

> The third party is entitled to believe the agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe. Thus, a third party can rely on the apparent authority of an agent when this is a reasonable interpretation of the manifestations of the principal.

*Bolus, supra,* 363 Pa.Super. at 262, 525 A.2d at 1222; *Hill v. State,* 86 Md.App. 30, 585 A.2d 252, 255 (1991); 1 Restatement (Second) Agency § 8.

The nature and extent of an agent's authority is a question of fact for the trier. *Joyner v. Harleysville Insurance Co.,* 393 Pa.Super. 386, 574 A.2d 664, 668 (1990), appeal denied, 527 Pa. 587, 588 A.2d 510 (1990); *Bolus, supra; Lesch v. Chevron,* 75 Md.App. 669, 542 A.2d 1292 (1988). Also, the trier-of-fact is to evaluate the conduct of the parties in light of all the circumstances in determining the existence of apparent authority. 1 P.L.E. Agency § 4; *Edart Truck Rental v. B. Swirsky and Co.,* 23 Conn.App. 137, 579 A.2d 133, 136 (1990). Apparent authority may be derived from a course of dealing or a single transaction. 3 Am.Jur.2d, Agency § 79; *Bills v. Wardsboro School Dist.,* 150 Vt. 541, 554 A.2d 673, 675 (1988).

In this case, the defendant-Forbes Chevrolet, Inc.'s employee (Black) twice induced the Turners to return to the job site with "assurances" that George Forbes, the president and sole owner of Forbes Chevrolet, Inc., would make sure that they would receive compensation for work performed. In fact, both Turners testified that the *only* reason they returned to the project was on the strength of Black's assurances that payment would be forthcoming "one way or the other".

Danny Lee Turner had no reason to disbelieve Black, an employee of Forbes Chevrolet, Inc. who was constantly at the construction site and with whom Danny Lee Turner spoke to in resolving any work-related problems which might arise.[2]

Both Black and Forbes denied ever having made any statements to the effect that Black was cloaked with the

---

**2.** As far as Billy Ray Turner was concerned, "no other factor prompted" him to go back to work except Black's assurances that "Forbes would pay ... if Susquehanna didn't...." N.T. 10/3/90 at 57. It was Turner's understanding, from his conversations with Black, that "one or the other ... Susquehanna or ... Forbes" would pay. Id. at 60. Turner was unwavering on this point during cross-examination. Id. at 62–63.

authority to bind Forbes Chevrolet, Inc. Because of the conflicting testimony, it was for the trier-of-fact to sift through the evidence and believe all, none or some of the evidence presented by the litigants. *Joyner*, supra; 1 P.L.E. Agency § 6.

From the result reached, it is obvious that the trial court found that Black had the apparent authority to bind Forbes Chevrolet, Inc.[3] We agree and do so on the basis of the following facts:

1) Black's 18–year–employment with Forbes Chevrolet, Inc.;

2) Black's blanket authority from George Forbes, the sole owner of Forbes Chevrolet, Inc., to design the new dealership;

3) Black's presence on a "daily" basis at the work site;

4) Black's self-defined status as the "representative" of Forbes Chevrolet, Inc. on the project;

5) Black's willingness to "do everything that [he] could do as a representative of Forbes Chevrolet, Inc. to get [the subcontractors] paid";

6) Black's authority to oversee the progress of the work "he and Forbes" had agreed upon and reviewed at the end of each day;

7) Black's authority to resolve disputes involving subcontractors and the general contractor (Susquehanna)—he would apply "pressure" upon Susquehanna to pay the subcontractors; and

8) Black, in the company of the president of Susquehanna, would review the daily progress of the subcontractors.

In light of the preceding, we find that the Turners acted reasonably under the circumstances, i.e., resumed work at Black's prompting and with his assurances that Forbes (as president and sole stockholder of Forbes Chevrolet, Inc.) would pay if Susquehanna failed to do so. *Costanzo v.*

---

**3.** Pennsylvania recognizes 4 ways in which an agent's authority may be acquired: 1) expressly; 2) impliedly; 3) by apparent authority; and 4) by estoppel. *Bolus*, supra.

*Chianese,* 177 Pa.Super. 414, 110 A.2d 802 (1955); *New Hampshire Bituminous v. Tab Aviation,* 132 N.H. 38, 566 A.2d 153 (1989).

Having carefully reviewed the particular facts of this case and the law of agency in Pennsylvania, we agree with the trial court's conclusion that Frank Black, an agent for Forbes Chevrolet, Inc., exposed his principal to liability with his assurances of payment to the Turners should Susquehanna fail to honor its contractual obligations with regard to the Forbes project. *Id.*

Judgment affirmed.