J. A18019/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RED RUN MOUNTAIN, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EARTH ENERGY CONSULTANTS, LLC., | : | |
| BRADLEY R. GILL, SYLVIA B. MASE, | : | |
| AND MICHAEL HUGHES, | : | No. 2259 MDA 2015 |
| AS EXECUTORS OF THE ESTATE OF | : | |
| RICHARD D. MASE, DECEASED | : | |

Appeal from the Order Entered December 1, 2015,
in the Court of Common Pleas of Lycoming County
Civil Division at No. 12-01259

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND STEVENS,* P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED MAY 05, 2017**

Red Run Mountain, Inc. ("Red Run") appeals the orders of the Court of Common Pleas of Lycoming County that granted the motion for summary judgment of Earth Energy Consultants, LLC ("EEC"), and Bradley R. Gill ("Gill") and the motion for summary judgment of Sylvia B. Mase and Michael Hughes as executors[1] of the Estate of Richard D. Mase ("Estate"). We affirm.

---

* Former Justice specially assigned to the Superior Court.

[1] The executors were substituted as a party for Richard D. Mase ("Mase") on September 4, 2012 after Mase's death on July 3, 2012.

The record reflects that Red Run was incorporated in the State of Delaware on November 29, 1990. The initial shareholders, each with a 1/3 interest were Mase, John L. McDowell III, and Roy W. Cummings, Jr. These three individuals also comprised the Board of Directors ("Board"). Mase served as president of Red Run from its inception until January 19, 2011. Although the Board held an annual meeting, it gave Mase great latitude in running the day-to-day operations of Red Run. Red Run's purpose was defined in its articles of incorporation as any lawful purpose. Under the by-laws of Red Run, the president (Mase) had the authority to have general and active management of Red Run. Mase had the authority to sign documents on behalf of Red Run and to authorize checks. The Board elected Patricia Warren ("Warren") to serve as secretary of Red Run. She remained in that capacity for 20 years. She was unaware of any discussions regarding placing limitations on Mase's authority during her tenure.

Red Run owned 2,873.60 acres in McIntyre Township, Lycoming County. It was primarily used for the recreation of the shareholders. In 2003, Mase began discussions with Gill concerning the possibility of entering into oil and gas leases on Red Run's property. On February 21, 2003, Gill wrote a letter to Mase and proposed that he would prepare a geological report and base maps to attract companies interested in drilling for oil and/or gas on the Red Run property as well as on other properties owned by Mase in whole or in part. Gill sought an overriding royalty interest ("ORRI")

of 3.125% in the form of a geological fee. This fee would be recovered from the driller apart from the landowner royalty that Red Run would receive. On April 24, 2003, Red Run and Gill entered into such an agreement in which Gill would receive the 3.125% ORRI from any oil and/or natural gas extracted on Red Run's property. The parties agreed that this provision would be assigned by contract and referenced in the oil and gas leases. Mase signed the agreement which was witnessed by Warren. The other shareholders of Red Run did not receive notice of this agreement until September 2010.[2]

On June 14, 2005, Red Run entered into an oil and gas lease with East Resources, Inc. ("East"), a company which Gill had contacted on Red Run's behalf. Mase executed the agreement which provided for a royalty payment to Red Run for 12.5% of the gross proceeds for oil and gas obtained on the property. Mase neglected to include an assignment in the lease to Gill/EEC. On June 15, 2005, Gill wrote Mase and reminded him about the ORRI and suggested that the assignment should be recorded. On July 13, 2005, Gill contacted East about the ORRI assignment. East declined to amend the lease to include the assignment.

On August 1, 2005, Mase executed an assignment to Gill of the ORRI from Red Run's royalty interest. On March 6, 2009, Red Run and Gill agreed

---

[2] As of the time of the filing of the complaint, no royalty payments had been made to Red Run because no oil or gas had been removed from the property.

to reduce the ORRI to 2% following discussions between Gill and Red Run's legal counsel. Also, on March 9, 2009, Mase executed an amended assignment and conveyance that reduced the ORRI to 2% for Gill. A subsequent assignment was made with the same reduction for EEC.

In September 2010, Mase, who was ill with cancer, met with the Board to discuss a buy-out of his shares. Mase told the Board for the first time about the ORRI assignments with Gill/EEC. In January 2011, the Board authorized Mase to negotiate with Gill to cap the ORRI at $1,000,000. The negotiations failed which led to this litigation.

In its first amended complaint filed on November 16, 2012, Red Run sought a declaratory judgment that the agreements executed between Mase and Gill be declared null and void **ab initio**. Specifically, Red Run asserted that Mase acted beyond the scope of his corporate authority as president and as a member of the Board when he entered into agreements with Gill. Further, Red Run asserted that Mase did not have implied or apparent authority to bind Red Run under these agreements with EEC or Gill. Red Run also sought a declaration that, if the trial court determined that EEC and/or Gill were entitled to be paid a royalty, Mase would be personally liable rather than Red Run.

On February 6, 2015, EEC and Gill moved for summary judgment on the basis of the actual, implied/inherent, and/or apparent authority of Mase

and/or Red Run's attorneys, the law firm of McNerney, Page, Vanderlin & Hall, or in the alternative, on the basis of ratification/agency by estoppel.

By order dated June 18, 2015, the trial court granted the motion for summary judgment and dismissed EEC and Gill as defendants in the matter. The trial court determined that Mase had the authority to enter into the agreements with EEC and Gill. The trial court concluded that under **Rednor & Kline, Inc. v. Dep't of Highways**, 196 A.2d 355, 358 (Pa. 1964), Mase possessed the authority as president of a small corporation to enter into the agreements in question, especially since the other two shareholders/directors did not provide much supervision or oversight. The trial court concluded that the Board of Red Run intended to vest Mase with the inherent/apparent/implied authority to enter into the contracts with Gill when it placed him in the position of president and did not supervise his activities. The trial court further concluded that Red Run did not point to any evidence in support of its contention that the lease was outside the ordinary business dealings of Red Run. The trial court opined that it was Mase's error regarding the ORRI which reduced the amount of income available from the lease with East and not that the reduction in income was the result of Mase exceeding his authority. Although Red Run claimed that Gill had notice of Mase's lack of authority to enter into the agreements, the trial court concluded that Red Run did not point to evidence that Gill was aware that Mase lacked such authority. The trial court rejected Red Run's

contention that Mase intentionally failed to include the assignment in the lease with East because he wanted to conceal it from the other shareholders/directors because there was no evidence to support that contention. Regarding the 2009 assignments, the trial court concluded:

> As to the [2009] assignment, there is even more evidence of inherent/implied/apparent authority to enter the August 1, 2005 assignment to Gill, which reduced the ORRI to 2%. ["]Apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent authority he or she purports to exercise." ***Turner Hydraulics, Inc. v. Susquehanna Constr. Corp.***, [606 A.2d 532, 534] 414 Pa. Super. 130, 135-136 (Pa. Super. 1992) (citations omitted)[.] "The third party is entitled to believe the agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe." ***Id.*** "Thus, a third party can rely on the apparent authority of an agent when this is a reasonable interpretation of the manifestations of the principal." ***Id.***
>
> In the present case, in addition to being executed by the president of Red Run, the ORRI reduction to 2% was negotiated by Red Run's attorney, McNerney Page. The attorneys notified Gill that they represented Red Run. Red Run put Mase in the position as President and for twenty years without oversight and they consulted McNerney Page for legal counsel on an as needed bas[i]s for years with Mase as the primary contact. As such, a person of ordinary prudence could rely on the representations from Red Run's counsel, as confirmed by the president of Red Run; the counsel had authority to negotiate the reduction in ORRI.

Trial court opinion, 6/19/15 at 17-18 (footnotes omitted).

On September 1, 2015, the Estate moved for summary judgment. The Estate asserted that the undisputed facts conclusively demonstrated that, pursuant to Delaware law[3] and the general grant of authority given to the president of Red Run in its by-laws, Mase possessed the inherent power to enter into the contracts at issue. Alternatively, the Estate asserted that the contracts were within the authority impliedly granted to him by the Board's course of conduct over the years, and no evidence existed on which to find that Mase breached his duties of loyalty or good faith.

By order dated November 30, 2015, and filed December 1, 2015, the trial court granted the Estate's motion for summary judgment. The trial court determined, based upon the competent evidence of record, that Mase was authorized to enter into the agreements with Gill, EEC, and East. Further, the trial court also concluded that there was no evidence to support a claim that Mase breached his duties of loyalty or good faith. The trial court reasoned:

> Mase possessed an inherent actual authority by virtue of his position as President of Red Run and under Red Run's By-laws to conduct the "general and active management" of Red Run. **See**, Article V, Section 4 of By-Laws; **Joseph Greenspon's Sons [Iron and Steel Co. v. Pecos Valley Gas Co.**, 156 A. 350 (Del. 1931)]. Further, Mase possessed the

---

[3] In an order dated October 29, 2013, the trial court ruled that Pennsylvania law applied to the claim Red Run brought against EEC and Gill because the contract was formed in Pennsylvania. Because Red Run was incorporated in Delaware, the trial court ruled that Delaware law applied concerning Red Run's claim against the Estate regarding whether Mase had authority to enter into the contracts in question.

"general power and duties of supervision and management usually vested in the office of President of the corporation." *Id.* As such, Mase possessed the inherent authority to take any action usual and necessary to carry out the ordinary business of Red Run. *Id. See, also, Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. N.J. 1998). Mase was therefore authorized to execute the contracts at issue in this case because each of the 5 contracts fell within actions necessary to carry out the ordinary business of Red Run. Moreover, the course of conduct of the corporation conferred implied authority to execute each of the contracts at issue.

. . . .

Red Run further contends that, even if the consulting agreements were within the ordinary course of business, Mase lacked authority to enter the 2005 assignment to Gill (and the 2009 amendments) because they were unusual and extraordinary for transferring an asset of the corporation (3.125% ORRI, reduced to 2%) without board approval and for allegedly conferring a personal benefit upon Mase not shared by other shareholders. This Court disagrees. The course of dealing of Red Run included Mase transferring corporate assets to third parties without board approval. For example, Mase transferred 87.5% of the oil and gas royalties to [East] by executing the 2005 ERI Lease without board approval.

Further, Red Run's conjecture that Mase engaged in self-dealing or litigation avoidance is not supported by competent evidence and is too speculative. To support this theory, Red Run relies upon evidence that Red Run withdrew from evidence and did not intend to reference or introduce into evidence in its case-in-chief.[4] It is undisputed that Red Run was contractually liable for the 3.125% ORRI. By executing the assignment, Mase satisfied

---

[4] The evidence was a handwritten document of the recollection of a conversation that Jeff Pifer, a director and shareholder, had with Mase.

> the contractual obligation owed by Red Run. No competent evidence establishes that Mase executed the Assignment for another purpose, such as to avoid litigation; it has not been established that Mase was exposed to a reasonable risk of potential liability, or that Mase believed he was exposed to potential liability. Furthermore, executing the Assignment did not avoid litigation, as Red Run instituted the instant litigation. Finally, Mase shared the tangible and non-speculative financial obligation of the 2005 Assignment as 1/3 shareholder of Red Run (1/3 of 2% ORRI should drilling ever occur).

Trial court opinion, 12/31/15 at 4-5 (footnotes omitted).

Red Run appealed to this court on December 29, 2015. On March 23, 2016, EEC and Gill moved to quash the appeal because they claimed that this court lacked jurisdiction because Red Run's appeal was untimely. On May 6, 2016, this court denied the motion to quash without prejudice to bring the motion before the panel of this court, when the parties argued the merits.

EEC and Gill did raise the motion to quash at argument. Before addressing the merits, this court must address the motion to quash. EEC and Gill assert that this court lacks jurisdiction to hear Red Run's appeal because Red Run failed to file a timely notice of appeal from the trial court's order filed on June 19, 2015, which dismissed EEC and Gill from the case. Red Run did not appeal until December 23, 2015, which was after the order in the second summary judgment motion.

Pa.R.A.P. 903(a) provides that a notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken.

Pa.R.A.P. 341(a) provides that an appeal may be taken as of right from any final order of a government unit or trial court. At the time that Red Run appealed, Pa.R.A.P. 341(b) defined a final order as follows: "A final order is any order that: (1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule."[5]

Before Pa.R.A.P. 341(b)(2) was rescinded, Rule 341 contained the following note regarding final orders in declaratory judgment matters:

> Final orders in Declaratory Judgment Matters -- in an action taken pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§7531-7541, orders based on a pre-trial motion or petition are considered "final" within the meaning of this Rule, under subdivision (b)(2), if they affirmatively or negatively declare the rights and duties of the parties. ***Nationwide Mut. Ins. Co. v. Wickett***, 563 Pa. 595, 604, 763 A.2d 813, 818 (2000). Thus, an order in a declaratory judgment action sustaining a demurrer and dismissing some, but not all, defendants is considered a final order under subdivision (b)(2) because it is expressly defined as such by statute.
>
> Pa.R.A.P. 341 (Note).

The case law has evolved over time with respect to this rule. Not long ago, in ***Modern Equip. Sales & Rental Co. v. Main St. Am. Assurance Co.***, 106 A.3d 784 (Pa.Super. 2014), this court addressed the question of final orders in declaratory judgment actions and determined that when an

---

[5] Pa.R.A.P. 341(b)(2) was rescinded on December 14, 2015, effective April 1, 2016.

order fails to dispose of all of the claims for declaratory relief and did not completely resolve the dispute the order was not final. *Id.* at 788-789.

Here, Red Run sought declaratory relief against EEC and Gill under one theory of liability and against Mase, or ultimately the Estate, on another theory of liability. When the trial court granted the summary judgment motion of EEC and Gill and dismissed them from the case, this order did not dispose of Red Run's claims for declaratory relief against Mase under an alternative theory of liability. When the trial court granted EEC and Gill's motion for summary judgment, Red Run still had its claim against the Estate that Mase had acted without the authority of Red Run when he entered into agreements that potentially bound Red Run. It was not until the Estate moved for and was granted summary judgment that the issue of Mase's authority was resolved as to all parties. Therefore, the order granting EEC and Gill's summary judgment motion was not a final order. The motion to quash the appeal is denied.[6]

On appeal, Red Run raises the following issues for this court's review:

> 1. Whether the lower court committed an error of law and/or abused its discretion in determining that there was no issue of fact regarding the implied, inherent or apparent authority of [Mase] to execute the 2005 Assignment, the March 2009 Amendment to Assignment and the May 2009 Amendment[?].

---

[6] The Estate has applied for relief to correct references to the reproduced record in its brief which are incorrect and substitute the correct pages of the reproduced record. We grant this application for relief.

2. Whether the lower court committed an error of law and/or abused its discretion in determining that there was no issue of fact regarding the alleged breach of the duty of loyalty by [Mase], for failing to disclose to the Board of Directors the contractual liability he created for Red Run, and for unilaterally executing the 2005 Assignment, the March 2009 Amendment to Assignment and the May 2009 Amendment[?]

Appellant's brief at 5.

This court reviews a grant of summary judgment under the following well-settled standards:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontraverted [sic] allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

> [O]n appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.
>
> ***Gutteridge [v. A.P. Green Services, Inc.***, 804 A.2d 650, 651 (Pa.Super. 2002)].

***Wright v. Allied Signal, Inc.***, 963 A.2d 511, 514 (Pa.Super. 2008) (citation omitted).

Initially, Red Run contends that there is an issue of fact over whether or not Mase acted with implied/inherent/apparent authority when he signed the 2005 assignment, the March 2009 amendment to the assignment, and the May 2009 amendment. Red Run argues that the trial court committed an error of law and abused its discretion when it concluded that Red Run offered no competent evidence to create an issue of fact regarding whether Mase had implied/inherent/apparent authority to execute the agreements in question and that EEC and Gill could rely on that authority. According to Red Run, the trial court erred because the nature and extent of an agent's authority is always a question of fact for the jury. ***See Turner Hydraulic,***

- 13 -

*Inc. v. Susquehanna Constr. Corp.*, 606 A.2d 532, 534-535 (Pa.Super. 1992).

Red Run asserts that the Board did not execute a corporate resolution to permit or direct Mase to enter into the agreements with Gill and EEC. In the absence of express authority for Mase to sign the agreements with EEC and Gill, Red Run argues that Mase lacked traditional implied authority to sign the agreements because such authority can be found only when it is incidental to the authority actually conferred. Red Run also argues that Mase did not act with the apparent authority of Red Run because Red Run did not knowingly permit Mase to sign the agreements.

Red Run concedes that Mase was the general agent of Red Run with the inherent authority to undertake acts which normally accompany or are incidental to transactions which he was authorized to conduct which were intended to generate revenue. Red Run further concedes that Mase signed many such contracts between annual meetings of the Board without a formal vote by the Board. However, according to Red Run, Mase did not have the inherent authority to enter into agreements which would cause Red Run to lose money.

Red Run argues that the trial court erred when it failed to differentiate between the agreements signed by Mase before and after his admitted mistake of not including the ORRI payment to EEC and Gill as a condition of the agreement with East, such that the trial court's characterization of the

various agreements as being aimed at maximizing profits for Red Run was incorrect. Although Red Run focuses on the duty to maximize profits, there is not a clear duty for a president or director to do so. *See Inversions and Phantom Fiduciary Duties*, Practical Law Corporate and Securities, Delaware, July 31, 2014. Red Run specifically states that the 2005 assignment was intended to reduce profit for Red Run to avoid contractual liability and the 2009 amendments[7] also were intended to reduce profit though less than the 2005 assignment to reduce or avoid contractual liability.

As a result, Red Run argues that the trial court's failure to recognize this distinction resulted in a flawed analysis of the extent of Mase's authority. Red Run argues that the trial court erred when it viewed the agreements with EEC/Gill collectively rather than focusing on the 2005 assignment, confused the 2005 assignment with the 2009 amendment, and that attorneys from Red Run's counsel informed Gill that they represented Red Run when that was not the case at the time of the 2005 assignment. According to Red Run, these errors by the trial court caused it to abuse its discretion to conclude that Mase acted with implied/inherent/apparent authority of Red Run when he signed the 2005 assignment.

---

[7] The 2009 Amendments reduced the ORRI to 2%. One amendment was with Gill. One was with EEC.

It is undisputed that the Board of Red Run did not grant Mase express authority to sign the 2005 assignment. Red Run argues that Mase lacked apparent, implied, or inherent authority to execute the 2005 assignment. Apparent authority has been defined as the power to bind a principal when the principal has not actually granted authority to an agent but leads persons with whom his agents deal to believe that he has granted such authority. The test for apparent authority is whether a person of ordinary prudence, diligence, and discretion would have the right to believe that the agent possessed the authority he purported to exercise. *Apex Financial Corp. v. Decker*, 369 A.2d 488 (Pa.Super. 1976). Implied authority is the authority to do all that is proper, usual, and necessary to the exercise of authority already granted. *Id.* The trial court cited *Rednor & Kline, Inc. v. Dept. of Highways*, 196 A.2d 355 (Pa. 1964), in its discussion of authority given to the president of a closely held corporation and thoroughly identified the facts. The Pennsylvania Supreme Court reasoned that the signature of the president was *prima facie* evidence of authority particularly in the case of a closely held corporation. This court discerns no error of law or abuse of discretion on the part of the trial court for its reliance on *Rednor*. Clearly, Mase ran the corporation and its activities with only limited input from the Board and shareholders. The trial court did not abuse its discretion when it determined that Mase had the authority to enter into

these various agreements as he had almost unlimited authority to act on behalf of Red Run.

Red Run asserts that the issue of whether or not Mase acted with inherent authority is an issue which goes to the extent of his authority which it claims is always an issue of fact. However, **Joyner v. Harleysville Insurance Co.**, 574 A.2d 664, 668 (Pa.Super. 1990), holds "[a]lthough the question of whether a principal agent relationship exists is ordinarily one of fact for the jury, where the facts giving rise to the relationship are not in dispute, the question is one which is properly decided by the Court." Here, the trial court found no issues of material fact concerning the relationship between Red Run and Mase. After reviewing the record, this court agrees. Once again, this court discerns no error or abuse of discretion.

Red Run also asserts that it, as the principal, and EEC and Gill, as the third party, were not equally innocent. Except for Mase, the other stockholders and Board members had no knowledge about Red Run's contractual commitments to EEC and Gill until 2010, where Gill not only knew about the contractual commitments but also knew that the deal that Mase agreed to with East was not the deal that was intended under the terms of the 2003 agreement. Red Run argues that Gill should have then exercised a higher degree of due diligence to determine that the Board gave Mase the authority to reduce Red Run's royalty interest. This court does not agree. From the record, it appears that Gill reasonably believed that Mase

had the authority to sign all of the agreements between them. Nothing in the record indicates that Gill had any idea that Mase did not have authority to sign the agreements or that Mase's execution of the lease with East had the effect of changing Mase's authority.

Red Run next contends that the signing of the 2005 assignment, the 2009 amendment to assignment, and the 2009 amendment by Mase were not usual or ordinary tasks for the president of Red Run because said tasks were not intended to maximize profits. Red Run asserts that the trial court failed to recognize that the 2005 assignment was not signed by Mase for the purpose of maximizing profits but for avoiding contractual liability.

It is not clear exactly what to make of this argument. Red Run includes it in its argument as to whether Mase had authority to enter into the agreements, but Red Run cites to Delaware law which is pertinent as to whether Mase breached any duty to the corporation or its shareholders. Taken as a whole, these agreements were designed to maximize profits after taking into account the mistake made by Mase. Further, not every action taken by a corporation is designed to maximize profits. For instance, a charitable donation made by a corporation may lead to increased "goodwill" for the corporation but does not have a tangible effect of increasing profits. Further, Red Run does not cite any authority for the so-called duty to maximize profits.

Red Run next contends that there is an issue of fact regarding whether or not Mase breached his duty of loyalty to Red Run by concealing his omission and signing agreements which would cause a reduction in Red Run's profits.

Article 7 of Red Run's certificate of incorporation provides:

> No director shall be personally liable to the corporation or its stockholders for monetary damages for any breach of fiduciary duty by such a director as a director. Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit.

Red Run Mountain, Inc., Certificate of Incorporation at 2.

This provision of the certificate of incorporation follows Section 102(b)(7) of the Delaware General Corporation Law, 8 Del.C. § 102(b)(7). The purpose of Section 102(b)(7) is to allow shareholders to adopt a provision in the certificate of incorporation to exculpate directors from any personal liability for the payment of monetary damages for breaches of a director's duty of care but not for duty of loyalty violations and bad faith misconduct. *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001).

Red Run asserts that Mase breached his duty of loyalty when he failed to disclose the mistake he made when he failed to include the ORRI for EEC and Gill in the lease agreement he made with East. Red Run argues that this contention must be analyzed in the context of the business judgment rule under Delaware law which provides a presumption that an individual director is acting in the best interest of the corporation in the absence of any evidence to the contrary. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993). Red Run argued before the trial court that Mase acted out of self-interest when he signed the 2005 assignment. According to Red Run, Mase had a duty as a director and officer of Red Run to disclose his omission to the other members of the Board. Instead, he signed the 2005 assignment without the knowledge or consent of the Board which resulted in a reduction in the actual royalty interest Red Run was scheduled to receive.

Red Run argues that Mase breached his duty of loyalty when he signed the 2005 assignment. At the very least, Red Run argues that there is an issue of fact that precludes summary judgment. Red Run believes that the email to Gill where he admitted that he failed to include the ORRI in the lease with East as well as the lease itself rebuts the business judgment rule and that there is an issue of fact that he breached his duty of loyalty when he signed the 2005 assignment because the Estate disagrees.

However, while there is evidence that Mase made this oversight when he signed the lease, there is no evidence of conscious disregard of his duty of loyalty or bad faith misconduct when he failed to include the ORRI payment in the lease with East. From all evidence in the record, it appears that Mase made an honest mistake. There is no indication that he breached his duty of loyalty to the corporation. In **In re Walt Disney Co. Derivative Litig.**, 906 A.2d 27, 64-67 (Del. 2006), the Delaware court stated that one category of fiduciary misconduct involved the Chancellor's definition of bad faith/intentional dereliction of duty, a conscious disregard for one's responsibilities. The Delaware court quoted with approval the Chancellor's definition of bad faith which included an actual intent to do harm, a lack of due care as evidenced by gross negligence as well as a conscious disregard for duty:

> A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.

**Id.**, 906 A.2d at 67.

Here, there is nothing in the record to support a suggestion that Mase had an intent to act in a way that would not benefit the corporation or that he intended to violate any law. Further, Mase did not benefit himself from the transactions, apart from his role as a shareholder, contrary to what

Red Run suggests. Further, although Red Run makes frequent references to a duty to maximize profits, it is "highly dubious" that such a claim exists. *See Inversions and Phantom Fiduciary Duties*, Practical Law Corporate and Securities, Delaware, July 31, 2014. The trial court determined that, while Mase made a mistake, he did not breach his fiduciary duty. Once again, Red Run has failed to establish that the trial court committed an error of law or an abuse of discretion. This court cannot discern that there is an issue of material fact here.

Accordingly, the orders of the trial court are affirmed. The Estate's application for relief to correct record references is granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2017