J-A24002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.J. CONSTRUCTION & RENOVATIONS CORP. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JANE BJORNSEN AND RONALD BJORNSEN, HUSBAND AND WIFE | : | No. 823 EDA 2019 |
| Appellants | : | |

Appeal from the Judgment Entered April 23, 2019
In the Court of Common Pleas of Monroe County Civil Division at No(s):
No. 2025 Civil 2015

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED FEBRUARY 12, 2020**

Appellants, Jane Bjornsen and Ronald Bjornsen, appeal from the

judgment entered on April 23, 2019 in favor of Appellee, L.J. Construction &

Renovations Corp., and against Appellants, after a non-jury trial on Appellee's

breach of contract action.[1]  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants purport to appeal from the January 22, 2019 decree entered in favor of Appellee; however, an appeal properly lies from the entry of judgment following the trial court's disposition of post-trial motions. ***See Fanning v. Davne***, 795 A.2d 388 (Pa. Super. 2002); ***Shonberger v. Oswell***, 530 A.2d 112 (Pa. Super. 1987) ("judgment" entered after trial, but before filing and disposition of post-trial motions, was premature and void).  Although Appellants' notice of appeal was filed prematurely in the instant matter, final judgment was entered on April 23, 2019.  A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. ***Drum v. Shaul Equipment and Supply Co.***, 787 A.2d 1050 (Pa. Super. 2001).  Thus,

This case was initiated by Appellee's filing of a complaint on March 19, 2015. Appellee's breach of contract claim stems from a contract entered into by the parties for the reconstruction/renovation of Appellants' home. Appellants dispute the amount owed to Appellee, claim that they are entitled to certain credits under the contract, and brought a counter-claim for breach of contract against Appellee.

The following relevant findings of fact were set forth by the trial court in its Pa.R.A.P. 1925(a) opinion:

1. [Appellee] is L.J. Construction and Renovations Corp. with a business address located in Monroe County, Pennsylvania.

2. [Appellants] are Jane and Ronald Bjornsen of 199 North Shore Drive, Indian Mountain Lakes, Albrightsville, Carbon County, Pennsylvania.

3. [Appellee's] principal is Lukasz Zielinski.

…

5. The parties stipulated and agreed to allow into evidence the documents that were admitted to in the Answer and contained in the Complaint.

6. [Mr.] Zielinski has been the owner and supervisor of [Appellee] since 2004.

7. [Appellee] entered into a contract with [Appellants] in … May [of] 2012, for reconstruction/renovations at [Appellants'] home located at 199 North Shore Drive. (Note: The date of May 20, 2011 in the contract was a typographical error.)

8. [Appellants] … suffered a fire at their residence prior to May [of] 2012.

---

Appellants' notice of appeal relates forward to April 23, 2019. **See** Pa.R.A.P. 905(a)(5). We have adjusted the caption accordingly.

9.      [Appellants'] insurance covered $137,000 in loss to the structure and $100,000 for loss of personal property.

10.     The matter was overseen by a private insurance adjuster[, Joe Roselli ("Mr. Roselli"),] who got a plan for reconstruction approved by [Appellants'] insurance company.

11.     [Mr. Roselli] referred [Appellants] to [Appellee] and[,] ultimately[,] the parties agreed to a contract for the reconstruction/renovation of [Appellants'] residence.

12.     [Appellants] rented a house nearby while the work was being completed, at a cost of $1[,]150.00 per month plus utilities.

13.     The contract called for the reconstruction of a 1400 sq. ft. ranch home on the existing foundation for a price of $183,100.00.

14.     The contract was signed by the parties on May 20, 2012.

15.     [Appellee] had some preliminary work to do before a building permit could be issued, including completion of plans and a survey.

16.     [Appellee] ultimately obtained a demolition permit and a conditional building permit on August 30, 2012.

17.     The issuance of the building permit was conditioned upon the parties['] obtaining an engineering report to determine whether the existing foundation was structurally stable.

18.     James Wilson of Wilson Engineering Associates, LLC[,] was engaged to inspect the foundation and he determined the foundation was not safe to be re-used.

19.     The parties disagree as to whether or not they amended their contract to cover the need to remove and replace the existing foundation.

20.     Nonetheless, [Appellee] removed the remains of the structure and the foundation, and had a new foundation installed at a cost of $27,500.00.

21.     A final building permit was issued in April [of] 2013[,] following demolition and completion of the new foundation.

22. [Appellee] initially submitted the cost of the new foundation to [Appellants'] insurance adjuster for payment, but it was denied as not being covered by [Appellants'] insurance policy.

23. The parties have a dispute over the construction that occurred.

24. [Appellee] claims it was not paid for work performed and that all work was completed satisfactorily.

25. [Appellants] claim they were charged for work [that was] not part of the contract, that work performed was incomplete or unsatisfactory, and [they seek] resulting damages.

26. [Appellee] claims [that] any unsatisfactory items are covered by the company's one-year warranty[,] and [that] it would have corrected any deficiencies[,] provided notification was given and that [Appellants] had paid in full under the contract. Mr. Zielinski testified he received no notification from [Appellants] within the warranty period and that [Appellee] was not paid in full under the contract.

27. [Appellee] claims[,] in addition to the contract price of $183,100.00, that the foundation work cost $27,500.00, and all other upgrades cost $21,942.00[,] for a total price of $232,542.00.

28. [Appellee] alleges [Appellants] only paid $143,100.00, leaving a balance of $89,442.00 that remains due and owing on the total contract.

29. [Appellants] dispute responsibility for the foundation work and the total of all upgrades. They also allege that they are entitled to certain credits. [Appellants] claim they are owed:

   - $14,960.00 for extra rent due to delays;

   - $52,753.52 for work not completed by [Appellee];

   - $7,393.00 for out-of-pocket expenses and repairs;

   - $51,000.00+ for flooring/sheetrock/landscaping.

30. Following completion of construction, the parties had a final walk-through[,] at which time [Appellants] told Mr. Zielinski of their concerns.

31. The parties could not come to an agreement to resolve all of their issues.

Trial Court Opinion ("TCO"), 1/22/19, at 1-5 (unnecessary capitalization omitted).

A non-jury trial was held on October 29, 2018. After hearing testimony from both parties,[2] the trial court entered a decree on January 22, 2019, in favor of Appellee and against Appellants in the amount of $13,156.36.[3] On January 31, 2019, Appellants filed a motion for post-trial relief, which was denied by the trial court on February 5, 2019. Appellants filed a timely notice of appeal on March 1, 2019, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellants raise the following issues, which we address out-of-order, for ease of disposition:

A. Whether the trial court erred, as a matter of law, and abused its discretion in determining that the building permit was conditioned on the parties['] obtaining an engineering report

---

[2] In addition to the testimony of Mrs. Bjornsen, several tradesmen testified for Appellants as to the condition of the work performed at the residence by Appellee and as to the cost to complete the work requested by Appellants. Mr. Zielinski testified on behalf of Appellee. *See* N.T. Trial, 10/29/18; TCO at 5.

[3] The amount awarded by the trial court reflects the subtotal of $232,542.00, owed to Appellee for the original contract price ($183,100.00), the cost of the new foundation ($27,500.00), and the cost of additional upgrades ($21,942.00), less $143,100.00 paid to Appellee by Appellants and $76,285.64 total credits due to Appellants. *See* TCO at 22-23.

regarding the foundation, since no building permit was introduced into evidence?

B. Whether the trial court erred and abused its discretion in finding and determining that [] Appellants were liable for $27,500.00, the cost of construction of a new foundation for the home contracted by … Appellee, since [] Appellants did not agree to this cost and the private adjuster had no authority, apparent or real, to agree on their behalf to such an expense [?]

C. Whether the trial court erred and abused its discretion in awarding damages to [] Appellee for the construction of the foundation in the amount of $27,500.00, based upon a theory of unjust enrichment, when no claim for unjust enrichment was pled by [] Appellee[?]

D. Whether the trial court erred and abused its discretion in failing to award [] Appellants the costs associated with the installation of the new hot water heater in the amount of $8,405.89 to replace the hot water heater installed by [] Appellee[?]

E. Whether the trial court erred and abused its discretion in failing to give proper credits for contract work not done or improperly performed[?]

F. Whether the trial court erred and abused its discretion in failing to award [] Appellants rent they were forced to pay when [] Appellee failed to complete construction of their home in a reasonable period of time[?]

Appellants' Brief at 4-5.

Preliminarily, we note that Appellants' first issue regarding the trial court's finding of a conditional building permit is waived due to Appellants' failure to develop their argument. *See* Pa.R.A.P. 2119(b). After reciting the relevant trial court's findings of fact, Appellants broadly claim that "[t]hese findings of facts … were not supported by competent evidence and, therefore, should not have been considered by the trial court in reaching its decision…." Appellant's Brief at 15 (unnecessary capitalization omitted). Appellants

provide no further discussion and fail to cite to any legal authority whatsoever in support of their argument. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinely*, 799 A.2d 155, 161 (Pa. Super. 2002) (citing, *inter alia*, Pa.R.A.P. 2119(b)). "Without a reasoned discussion of the law … our ability to provide appellate review is hampered. It is not this Court's function or duty to become an advocate for [Appellants]." *Id.* (internal citations and quotation marks omitted).

Appellants also assert that the trial court should have awarded them the sum of $8,405.05 for the cost of replacing the hot water heater installed by Appellee. Appellants' Brief at 30. Again, they fail to include any legal analysis and/or citations to legal authority in support of their argument. Instead, Appellants solely endeavor to dispute the trial court's findings of fact, pointing to contradictory and self-serving testimony. *Id.* at 31-32. They are essentially asking this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder, which we cannot and will not do. *See Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa. Super. 2016). Accordingly, we deem this issue to be waived. *See* Pa.R.A.P. 2119(b).

Next, Appellants admit in their brief that their assertion regarding the trial court's failure to give credit for certain contract work allegedly not done or improperly performed is waived, because they were unable to establish the

monetary amount of damage at trial. Appellants' Brief at 32. Thus, we need not address the merits of this issue.

Appellants further contend that the trial court abused its discretion in failing to award them $14,690.00 in excess rent, which "they were forced to pay when [] Appellee failed to complete construction of their home in a reasonable period of time." *Id.* at 33. However, the trial court found that Appellants failed to offer any evidence in support of their claim. TCO at 20.

> First, there were no timeframes or completion dates in the parties' contract. There was no time of the essence clause in the parties' contract. [Appellants] claim they told [Appellee] the construction had to be finished within one year as their insurance company would only pay their rent for that long. However, there was no agreement to this by [Appellee] and nothing noted in the contract. [Appellee] admitted to delays due to obtaining permits, dates [its crew] could not travel on association roads, and time to inspect and replace the foundation. However, these were delays attributable to third parties and not to [Appellee]. Since there was no completion date called for in the contract, and no other agreement of the parties, there can be no damages for rent due to delay.

*Id.* at 20-21.

The only legal citation Appellants provide in support of their claim is to the following general rule: "When no time for performance of a contract is specified, the law will imply that it is to be performed within a reasonable time considering the nature of the business." Appellants' Brief at 33 (citing *Field v. Golden Triangle Broadcasting, Inc.*, 305 A.2d 689, 694 (Pa. 1973); *Orlowski v. Moore*, 181 A.2d 692, 693 (Pa. Super. 1962)). Appellants fail to provide any further legal analysis. They simply refer to self-serving

testimony from two witnesses at trial and conclude that, "[g]iven the testimony of both of these individuals, a reasonable period of time to construct the home would have been one year." *Id.* at 37. Again, Appellants fail to appreciate that this Court cannot re-weigh evidence and substitute its judgment for that of the fact-finder. *See Rodriguez*, *supra*. Additionally, Appellants fail to provide any legal analysis or cite to any legal authority to support their assertion that one year would have been a reasonable period of time to construct the home in the instant matter. Thus, we are constrained to deem this issue waived. *See* Pa.R.A.P. 2119(b). Moreover, even if Appellants had properly preserved this issue, we would conclude that the trial court's finding is well-supported by the record, and we would discern no abuse of discretion.

Before we address the merits of Appellants' remaining two claims, we note our standard and scope of review in an appeal from a non-jury verdict:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*J.J. DeLuca Co., Inc. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa. Super. 2012) (quoting *Rissi v. Cappella*, 918 A.2d 131, 136 (Pa. Super. 2007)). Moreover, "[w]e will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the

- 9 -

court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Id.* (quoting *Ecksel v. Orleans Const. Co.*, 519 A.2d 1021, 1028 (Pa. Super. 1987)).

Instantly, Appellants aver that the trial court abused its discretion in determining that they were liable for the cost of construction of a new foundation for their home. Appellants assert that they did not agree to this cost and that Mr. Roselli, the adjuster, had no authority to agree on their behalf to such an expense. Appellants' Brief at 4, 15. In support of their argument, Appellants state that "no agency relationship existed between [them] and Mr. Roselli based upon which Mr. Roselli could agree on behalf of [] Appellants that the foundation could be constructed for a price of $27,500.00…." *Id.* at 27-28. Appellants suggest that "Mr. Roselli was simply the agent of [] Appellants to deal with their insurance company as a private adjuster[,]" and that "it is … clear that … there was no apparent authority that Mr. Roselli could act for them with regard to the construction of the home or the foundation." *Id.* at 27. Additionally, they argue that the trial court's finding of implied consent on the part of Appellants to the construction of the new foundation is "totally contradicted by the testimony of Mrs. Bjornsen…." *Id.* at 28. The record clearly belies Appellants' claims.

"It is a general rule of law that the principal in a principal/agent relationship is only 'bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agent's employment….'" ***Turner Hydraulics, Inc. v.***

***Susquehanna Const. Corp.***, 606 A.2d 532, 534 (Pa. Super. 1992) (quoting

3 Am.Jr.2d, Agency § 261).

> "The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." ***Lapio v. Robbins***, 729 A.2d 1229, 1234 (Pa. Super. 1999) (citation omitted). The creation of an agency relationship requires no special formalities. ***Lincoln Avenue Indus. Park v. Norley***, … 677 A.2d 1219, 1222 ([Pa. Super.] 1996). The existence of an agency relationship is a question of fact. ***Volunteer Fire Co. v. Hilltop Oil Co.***, … 602 A.2d 1348, 1351 ([Pa. Super.] 1992). The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. ***Id.*** "In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed." ***Commonwealth v. Maker***, 716 A.2d 619, 623 (Pa. Super. 1998)…. However, we do not assume agency by a mere showing that one person does an act for another. ***Ferry v. Fisher***, 709 A2d 399, 405 n.5 (Pa. Super. 1998).

***Walton v. Johnson***, 66 A.3d 782, 787 (Pa. Super. 2013) (quoting ***B&L***

***Asphalt Industries, Inc. v. Fusco***, 753 A.2d 264, 269 (Pa. Super. 2000)).

It is well-established that:

> An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. ***See Bolus v. United Penn Bank***, … 525 A.2d 1215 ([Pa. Super.] 1987). Implied authority exists in situations where the agent's actions are "proper, usual[,] and necessary" to carry out express agency. ***See Passarelli v. Shields***, … 156 A.2d 343 ([Pa. Super.] 1959). Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. ***See Turner Hydraulics v. Susquehanna Construction Co.***, … 606 A.2d 532 ([Pa. Super.] 1992). Authority by estoppel occurs when the

principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. ***See Turnway Corp. v. Soffer***, … 336 A.2d 871 ([Pa.] 1975).

***Id.*** at 786.

Here, the trial court opined:

[The cost of the foundation] was not part of the original contract. All parties agreed that the original contract contemplated that the new structure would be built on the existing foundation after demolition of the burned-out remains of [Appellants'] house. The original contract included the demolition work. Mr. Zielinski testified that before the building permits would be issued by the township, the parties were required to have the foundation inspected as part of the permitted demolition work. This was required as part of the demolition permit and conditional building permit issued by the township on August 30, 2012. An outside engineer hired by [Appellee], Wilson Engineering, issued a report and determined that the foundation was in poor condition and had to be removed and replaced. Mr. Zielinski prepared an estimate for the additional work and submitted it to the insurance adjuster, but the work was denied as it was not covered by [Appellants'] insurance policy. Mr. Zielinski's estimate for the work totaled $27,500.00. A copy of the estimate, dated September 13, 2012, is contained in [Appellee's] Complaint as Exhibit "D". [Appellee] then went ahead with the demolition work and clean-up at the property.

[Appellee] proceeded with the new foundation work in April [of] 2013[,] after all permits were issued by the township and the demolition work had been completed. Ms. Bjornsen testified that she and her husband refused to pay for the reconstruction of the foundation because they never agreed for the work to be done. It is undisputed that the work had to be done in order for the house to be re-built. There are no allegations that [Appellee] caused an event that required the removal of the foundation. There are no allegations the cost of the foundation was included in the original contract. There is no evidence that [Appellants] ever objected to [Appellee's] demolishing and re-building the foundation, or that they objected to the quality of the work. In fact, the house was not permitted to be re-built by the township unless the foundation was replaced.

Mr. Zielinski provided credible evidence that [Appellants'] agent, [Mr.] Roselli[,] … agreed with [Mr.] Zielinski as to the terms of the additional work for the foundation contained in [Appellee's] Complaint at Exhibit "D". Ms. Bjornsen testified she met Mr. Roselli through her daughter and believed he was the insurance adjuster. Ms. Bjornsen's memory and understanding of events was not convincing. Mr. Zielinski's testimony as to the relationship of Mr. Roselli to [Appellants] is much more plausible. That relationship was described as Mr. Roselli being an agent for [Appellants]. He was a public adjuster retained by [Appellants] to see them through the insurance process. He had the authority, *even if just apparent authority*, to act on behalf of [Appellants].[4] As such, an agreement to undertake the extra work for the foundation for a cost of $27,500.00 was reached between the parties, either through [Appellee] and [Appellants'] agent, or by the express or implied consent of [Appellants]. The entire project could not have proceeded without the installation of a new foundation. The township would not have permitted it. It is believable that Mr. Zielinski proposed the estimated work to [Appellants'] agent, Mr. Roselli, and that he was authorized to proceed on those terms. It was also believable that [Appellants] gave implied consent to the work[,] as they knew the foundation had to be re-constructed and they never objected.[5] [Appellants] are responsible for the additional cost of the foundation in the amount of $27,500.

TCO at 12-14 (emphasis added; citations to record and footnote omitted).

_____

[4] Mr. Zielinski testified that he dealt with Mr. Roselli, not Appellants, regarding the construction contract. "I never dealt with [Appellants]. I dealt with Mr. Roselli. He was their representative… [f]or the construction contract. He was always present with them." N.T. Trial at 89. In fact, Mr. Zielinski stated that he was initially approached by Mr. Roselli regarding the construction contract, and that it was through his connection with Mr. Roselli that he was introduced to Appellants. *Id.* at 49.

[5] Mr. Zielinski indicated that throughout the demolition, the process of obtaining pre-construction approval from the township, the construction of the new foundation, and the construction of the house, Appellants never voiced any concerns to him. N.T. Trial at 53, 59. He further stated that he never heard any complaints from Appellants until the filing of their counterclaim in this matter. *Id.* at 67.

We determine that the trial court's finding of Mr. Roselli's apparent authority to act on behalf of Appellants, as well as its finding of Appellants' implied consent to the construction of the new foundation, to be well-supported by the record. We discern no error of law or abuse of discretion by the trial court. Moreover, we emphasize that the trial court found Mr. Zielinski's testimony regarding the relationship between Mr. Roselli and Appellants to be more credible than that of Ms. Bjornsen. To the extent that Appellants question the trial court's credibility findings, we note that "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (internal quotation marks and citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the finder of fact." *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 545.

Finally, Appellants contend that the trial court erred and abused its discretion in awarding damages to Appellee for the cost of the foundation based upon a theory of unjust enrichment. To the contrary, the trial court expressly stated in its opinion that it did *not* take into consideration the benefit of a new foundation received by Appellants in determining that Appellants are

responsible for the cost of the foundation.[6]  Thus, Appellants' claim is wholly without merit.

Accordingly, we affirm the April 23, 2019 judgment in the amount of $13,156.36, entered in favor of Appellee and against Appellants.

Judgment affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/12/20</u>

_____

[6] The trial court noted at the end of its decision regarding Appellants' liability for the new foundation:  "Although there was no claim for unjust enrichment, [Appellants] clearly received the benefit of a new foundation which was necessary for the home to be re-built.  We do *not* make this decision based upon the inequities involved, but note it for the record."  TCO at 14 n.1 (emphasis added).